Commonwealth *v.* McKinley, Appellant.

Argued April 10, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Hymen Schlesinger,* for appellant.

*Fremont J. McKenrick,* Assistant District Attorney, with him *David C. Wolfe,* District Attorney, for appellee.

OPINION BY ERVIN, J., June 18, 1956:

This is an appeal from the judgment of sentence of the Court of Quarter Sessions of Cambria County.

The defendant was arrested and charged with indecent assault upon a seven-year-old girl. He was indicted, tried by a jury and found guilty though the jury recommended leniency. Defendant's demurrer to the evidence was overruled. Motions for new trial and in arrest of judgment were refused and defendant was sentenced to undergo imprisonment in the Cambria County jail for a period of not less than six months nor more than one year. This appeal followed.

The testimony discloses that shortly after 12:30 o'clock in the afternoon of October 12, 1954, Columbus Day, the child involved in this case, whom we shall refer to as Karen, accompanied her brother to the Chandler School where he attended afternoon classes. After her brother had gone into the school building Karen began playing around the fire escape. Karen testified that the defendant told her to get down from the fire escape because she might fall. She also testified that, at the time, the defendant and three other men were washing windows. After the defendant finished washing windows Karen testified that he went into the school building and she "followed him in." She stated they went through several doorways and rooms until they were in a little basement room containing a toilet. She testified the defendant asked her if she was ticklish, to which she replied "Yes." The defendant then picked her up and put her back down. They then went through a kitchen into another room where she testified the defendant, after stating he would give her fifty cents, committed the criminal act. She also testified that the defendant gave her fifteen cents and they both then left the school building. Karen, on her way home, stopped at a candy store and bought some candy, then stopped at a girl friend's house and later went on home and told her mother of her experience.

The defendant denied the charge and took the stand in his own defense. He testified he was receiving public assistance and was assigned to the Chandler School washing windows and doing other odd jobs. He stated that about 1:00 o'clock p.m., while washing windows, he noticed Karen underneath the fire escape and warned her to stay away before she got hurt. He stated that he took a ladder into the school building and that when he went into the school, he noticed Karen stand-

ing in the hallway and told her to leave. He testified it only took him a few minutes to put the ladder away and that the child did not follow him into the room. He also denied he ever had a conversation with the girl or that he ever offered her any money. He further stated that when he was ready to leave Karen said to him that she would come back the next day and wash the windows for 50¢.

Defendant contends the trial judge erred in failing to qualify the child witness by interrogating her on her understanding of the obligation to tell the truth. In determining the competency of a witness of tender years, much must be left to the discretion of the trial judge. *Com. v. Allabaugh,* 162 Pa. Superior Ct. 490, 58 A. 2d 184; *Com. v. Carnes,* 165 Pa. Superior Ct. 53, 67 A. 2d 675. In the instant case the trial judge made a preliminary examination of the child witness immediately after she was sworn and ascertained she was eight years of age, was "passing the third" grade in school and attended St. Columba's Church. The witness was then subjected to a detailed inquiry and examination as to the events occurring on October 12, 1954 involving her encounter with the defendant. *Defendant's counsel did not object to her competency and later subjected her to a lengthy and detailed cross-examination.* Defendant's counsel had the right to request that the witness be further qualified if not satisfied as to her competency. "If a party is in doubt as to the competency of a witness, he should examine him in that regard, and the court should make a determination thereon preliminarily when the witness is produced. So, ordinarily, the competency of a child is to be determined at the time he is offered as a witness. It is the privilege and right of the objector to have the witness examined on his voir dire before he is sworn." 3 Wharton's Criminal Evidence §740. At

no time during the trial was there any objection raised as to the competency of the child witness. Moreover, counsel for the defendant subjected the witness to a searching cross-examination. Such cross-examination, coupled with the failure to object at any time during the trial, constitutes a waiver of objection as to the competency of this witness. Also the question of the competency of the child witness was not included in the motions for a new trial and in arrest of judgment. It is, therefore, not properly raised for the first time in this appeal: *Com. v. DiCarlo,* 174 Pa. Superior Ct. 611, 101 A. 2d 410; *Com. v. Bozzi,* 178 Pa. Superior Ct. 224, 116 A. 2d 290.

Defendant also asserts it was error for the trial judge to permit the jury to base a conviction upon the identification of a child eight years of age when her testimony contains uncertainties and contradictions. On the issue of identification in sex perversion cases such as the one here being considered we are mindful of the duty of the trial judge, so well stated by Judge HIRT in *Com. v. Kettering,* 180 Pa. Superior Ct. 247, 119 A. 2d 580, as follows: "A conviction, from necessity, may rest upon the uncorroborated testimony of a mere child, but the testimony of the child as to the identity of the assailant, because of the inherent possibility of error, must be open to the closest scrutiny by the jury. And in cases of sex perversion such as this where jurors, outraged by the loathsomeness of the offense are prone to convict, there is a duty on the trial judge to safeguard the rights of a defendant by presenting the issue of identity to the jury in a light as favorable to him as the testimony will admit." The testimony clearly discloses that on the day following the alleged assault Karen, accompanied by the investigating officer and her father, went to the Chandler school and the child instantly identified the defendant as the man who

had molested her. Joseph Esposito, the investigating officer, testified concerning this identification as follows: "Q. And at the school did you see the defendant? A. Yes, sir. Q. Now, did Karen in your presence pick out the defendant? A. Yes, sir. Q. And how did she do it? A. Well, we were coming out of the rear of the school and we were just going up the first two steps and the defendant was coming down out of the school with a bucket of water when she pointed him out as being the man." Karen also identified the defendant in a "line-up" held in the principal's office which included the defendant and the three other men with whom he had been working at the school on the day the offense occurred. Defendant was also identified by Karen in court at the trial. In support of his contention that Karen was mistaken in her identification of him defendant asserts the child was mistaken in the color of the clothes he wore on the day of the alleged offense, claiming he did not have a green sweater and green trousers which Karen claimed he wore on the day she was assaulted, but was dressed in a red shirt and brown trousers on that day. However, the child's identification of defendant as her assailant was not shown to have been based on the color of his clothes. And she had definitely identified him on sight as the offender the day following the assault although he admittedly was dressed differently than he had been the day before. He testified that on the day following the assault he wore a pair of khaki pants and a light short sleeve shirt. Further exception to the identification of defendant is based on the assertion that at the "line-up" conducted in the principal's office Karen initially identified one of the defendant's co-workers as her assailant. This contention is based on the testimony of the co-worker who testified Karen appeared to identify him first but her father interfered in some way and

that she then pointed to the defendant. However, the two other workers in the line-up and others who were present at the time all testified that Karen pointed out the defendant without any hesitation. Under the circumstances, the issue of identification was a matter for the jury to determine and was properly presented to them in the charge of the trial judge.

Defendant also asserts it was error for the trial judge to refuse to grant a mistrial because of an alleged prejudicial and inflammatory remark by the district attorney. The basis for this contention is the question asked by the district attorney during direct examination of one of the witnesses for the Commonwealth, a truant officer of the Johnstown School District, who was in the principal's office on the day following the assault when the "line-up" was held. The district attorney asked the witness: "Q. was Karen Mauk brought into the room after the line-up?" Karen Mauk was the victim of the tragic Halloween "trick or treat" slaying in Conemaugh on October 28, 1954. Defendant asserts the interjection of the name of the victim of this tragic slaying seriously prejudiced the defendant so as to make a fair trial impossible and that the trial court should have granted the motion for a mistrial. It is admitted the mistake in name was inadvertent. Moreover, the defendant does not dispute the statement in the brief of the district attorney that "It was further discussed and agreed by the opposing counsels and the trial judge, that to further discuss the matter in the presence of the jury would bring to their special attention and tend to emphasize a fact that they had failed to comprehend." Furthermore, considering the nature of the obvious mistake, the witness to whom the question was addressed and the stage of the trial at which the mistake occurred, we do not consider the reference to Karen Mauk was prejudicial or

inflammatory. It is also reasonable to infer there was no prejudicial effect on the jury from the recommendation of leniency made by the jury when they returned their verdict. In any event, refusal of the motion for a mistrial was solely within the discretion of the trial judge. *Com. v. Capps,* 382 Pa. 72, 114 A. 2d 338. We find no abuse of that discretion.

The trial judge properly instructed the jury to ignore any evidence of defendant's offer to take a lie-detector test. "In the absence of a stipulation of the parties to the contrary, the results of lie detector tests are inadmissible when offered in evidence for the purpose of establishing the guilt or innocence of one accused of a crime, whether the accused or the prosecution seeks its introduction. The reason most commonly assigned for the exclusion of such evidence is the contention that the lie detector has not as yet attained scientific acceptance as a reliable and accurate means of ascertaining truth or deception." 2 Wharton's Criminal Evidence §666. The results of lie detector tests being inadmissible and precluded from consideration by a jury because unwarranted inferences are likely to be drawn as to the guilt or innocence of one accused of a crime, the mere offer or refusal to undergo such a test is also properly excludable from the jury's consideration for the same reason.

Defendant also contends it was error for the trial judge to dismiss his petition for writ of error coram nobis. No appeal was taken from the dismissal of the petition by the court below. However, without excusing this failure, we have considered the averments of the petition and find the dismissal was entirely proper. As stated by Judge Ross in *Com. ex rel. Patterson v. Keenan,* 180 Pa. Superior Ct. 352, 354, 119 A. 2d 660: "A writ of error coram nobis is designed to bring before the court rendering the initial judgment such mat-

ters of fact which were unknown at the time the judgment was rendered, through no fault of the defendant, but which had they been known, would have prevented rendition of the judgment." The averments of the petition relate only to alleged errors prior to or during the trial and can only be properly raised by appeal from the conviction.

We conclude the defendant was fairly tried and was convicted by sufficient competent testimony which the jury accepted as proof of guilt beyond a reasonable doubt.

Judgment of sentence affirmed.