Commonwealth *v.* Smith, Appellant.

458

Argued November 11, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Roy H. Davis,* for appellant.

*Romer Holleran,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Ar-*

*len Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, May 25, 1972:

At approximately 9:00 A.M. on Sunday, April 20, 1969, Bobby Jean Petty was fatally shot through the head at her mother's apartment in Philadelphia. The incident was immediately reported to the police who broadcast a city-wide radio alert, describing appellant and his automobile. About 9:20 A.M. appellant was observed by a detective, and after a high-speed chase along the Schuylkill Expressway was stopped and arrested about four miles from the scene of the crime. A .38 calibre pistol, later identified as the murder weapon, was recovered from the front seat of his car. Appellant was taken to the police station where he was given full *Miranda*[1] warnings and allowed to telephone his wife. At 2:30 P.M. on the same day, appellant signed a seven-page confession. This statement was held voluntary following a suppression hearing, and over objection at trial it was admitted into evidence.

Appellant was convicted by a jury of murder in the first degree and his sentence fixed at life imprisonment. Following the denial of post-trial motions, this appeal was taken. It is asserted that the statement given to the police was the result of coercion and should have been suppressed, and that the verdict was against the weight of the evidence. We disagree.

## I.

Appellant contends that at the time his confession was taken he was too intoxicated to understand the constitutional warnings, thereby rendering involuntary

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

his waiver and subsequent statement. The fact that an accused has been drinking does not automatically invalidate his subsequent incriminating statements. The test is whether he had sufficient mental capacity at the time of giving his statement to know what he was saying and to have voluntarily intended to say it. Recent imbibing or the existence of a hangover does not make his confession inadmissible, but goes only to the weight to be accorded to it. See *United States v. Martin,* 434 F. 2d 275 (5th Cir. 1970) ; *United States v. Kershner,* 432 F. 2d 1066 (5th Cir. 1970) ; 2 Wharton's Criminal Law (12th Ed.) §388 (Cum. Supp. 1970).

The evidence presented at appellant's suppression hearing conflicted. The Commonwealth offered the testimony of two detectives who had interrogated appellant at the police station. Both testified that although he appeared to have been drinking and was nervous and shaky, appellant was alert and responsive, and at no time failed to understand the nature of the interrogation or the questions asked of him.

Appellant offered the testimony of his wife that on the Saturday night and early Sunday morning here involved he had been drinking heavily. Appellant himself testified that he had had several drinks at the victim's home and when apprehended by the police requested and was granted permission to finish the remaining one-half of a fifth of whiskey which was on the car seat. He insisted that he had passed out at the police station and had no recollection of any events which transpired there, including the three-hour interrogation and the signing of his name to a total of twenty-one pages of confession (seven pages in triplicate). Appellant's son testified that when seen by him at the station about 4:00 p.m. on the Sunday involved, his father had bloodshot eyes and slurred speech and that he stumbled when he walked.

The Commonwealth was required to show voluntariness only by a preponderance of the credible evidence. *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A. 2d 426 (1968); *Lego v. Twomey*, 404 U.S. 477, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972). The trial judge elected to believe the detectives' testimony as to the appellant's condition and capacity at the time of giving his statement and not that of appellant and his family. An appellate court does not weigh evidence or pass upon the credibility of witnesses, and there is no basis for us to hold as a matter of law that the court's finding of voluntariness of the confession was not adequately supported and well within the court's discretion.

It should be noted further that, since the issue of voluntariness was again raised at trial, the trial judge submitted that issue to the jury. Such a procedure has received prior recognition by this Court. See *Commonwealth v. Camm*, 443 Pa. 253, 260, 277 A. 2d 325 (1971).[2]

## II.

Appellant's other contention is that the verdict was against the weight of the evidence and was insufficient as a matter of law to justify first degree murder. From the evidence offered by the Commonwealth the jury was warranted in finding the following: Appellant had been married for 32 years, but for about 5 years had been seeing Bobby Jean Petty, the deceased, almost daily.

---

[2] In *Lego v. Twomey, supra*, where the judge did not resubmit the voluntariness issue to the jury, the U. S. Supreme Court held that a defendant is not *entitled* to this additional determination. Of course, when such a submission is made, a convicted defendant has no valid objection, because the error, if any, in allowing the jury to consider the matter is in his favor; it is one more string to defendant's bow.

She too was married, though separated from her husband, and lived in an apartment fully furnished by appellant. On Saturday night, April 19, 1969, when appellant went to visit his paramour she told him he would have to leave because her husband was coming. Appellant did so, only to return on Sunday morning, with his pistol tucked in his waistband. Learning that Mrs. Petty was at the home of her mother, a Mrs. Wellman, Smith proceeded there where he found Bobby Jean, her two daughters and her mother. The mother and daughters of the victim testified that the deceased and appellant had an audible argument in the bedroom. The older daughter, Venita, then heard Bobby Jean scream "Rabbit [appellant's nickname] said he is going to kill me." Mrs. Wellman ran into the bedroom and told appellant he had to leave. When he refused, she started pushing him toward the door. In the vestibule, with the daughters looking on, appellant pulled the pistol and fired it at least three, and possibly five times. One bullet struck the deceased in the head, resulting in her death before she reached the hospital. Mrs. Wellman, Venita, and one Marjorie Simmons, who lived upstairs and had responded to the shots, all testified that after firing the gun appellant said, "Now she's gone. If I can't have her, nobody else will." He then walked out the door, got into his car and drove away, to be apprehended very soon thereafter as above related. The confession discussed above is primarily corroborative of these facts, and adds some embellishment.

Appellant's trial testimony as to what happened is completely different. He denied taking the gun with him on the Sunday morning, claiming that he had previously given it to Bobby Jean. Although appellant admitted that there was an argument and subsequent struggle at the home of Mrs. Wellman, he said it was precipitated by Mrs. Wellman's trying to eject him

with a kitchen knife. It was appellant's contention that the gun went off by accident during what he termed a drunken brawl, and that even if the shooting constituted murder, it could not rise higher than second degree because of his inebriated condition. *Commonwealth v. Gwyn*, 441 Pa. 546, 272 A. 2d 891 (1971); *Commonwealth v. Ingram*, 440 Pa. 239, 270 A. 2d 190 (1970). These were questions of fact properly submitted to the jury and which it could properly decide adversely to appellant. "[T]he test of the sufficiency of the evidence—irrespective of whether it is direct or circumstantial, or both—is whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which if believed the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted." *Commonwealth v. Frye*, 433 Pa. 473, 481, 252 A. 2d 580 (1969), and cases cited therein. The Commonwealth's evidence clearly is sufficient to support the finding that the appellant was guilty of a willful, deliberate and premeditated killing.

Judgment of sentence affirmed.

The former Mr. Chief Justice BELL and the former Mr. Justice BARBIERI took no part in the consideration or decision of this case.