Commonwealth *v.* Moore, Appellant.

Argued November 16, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDER-INO, JJ.

*Dennis Haggerty*, for appellant.

*William J. Stevens, Jr.*, Assistant District Attorney, with him *Robert B. Lawler* and *Milton M. Stein*, Assistant District Attorneys, *Richard A. Sprague*, First Assistant District Attorney, and *Arlen Specter*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, November 26, 1973:

On the evening of July 11, 1969, one Granville Sawyer was fatally shot in the abdomen at his home in Philadelphia. One week later the appellant, Irvin Moore, aged 23, was arrested in connection with the incident and gave two incriminating statements to the

police. He was subsequently indicted, and, after a jury trial, was convicted of first degree murder and aggravated robbery. Post-trial motions were denied and Moore was sentenced to life imprisonment. This is a direct appeal from the judgment of sentence.

The principal contention urged upon us in support of reversal is that appellant's two inculpatory statements were involuntary and should have been suppressed. It is also asserted that the trial judge committed error in charging the jury on felony murder when the jury had asked only for further instructions as to voluntary manslaughter.[1] We conclude that the court below was correct in denying the motions in arrest of judgment and for a new trial, and will, therefore, affirm.

## I. Voluntariness of the Confession

The attack on appellant's statements to the police is that, at the time of his interrogation, he was undergoing severe heroin withdrawal pains to the extent that he could not, of his own free will, make a decision to confess. Appellant was arrested at his home on July 18, 1969, a week following the shooting, at about 3:30 in the morning. After being taken to Police Headquarters and given full Miranda[2] warnings, Moore gave his first statement to the police detectives. The written statement was substantially prepared between 6 and 7 o'clock. Appellant, then complaining of stomach cramps and watering eyes, was examined by a police doctor. The doctor made a report in which he found that Moore was "suffering from acute withdrawal symptoms and is a manifestation of narcotic addiction." The report continued: "However, it is my opinion that he is quite alert and is lucid and fully capable of making

---

[1] An additional point was raised which we do not consider. See note 5, infra.

[2] Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694 (1966).

a valid statement." Appellant then completed, read and signed his statement at 7:20 a.m. Two hours later the detectives took appellant to the Philadelphia General Hospital for treatment of the withdrawal symptoms. Upon returning to Police Headquarters at about 11 o'clock, Moore made a second inculpatory statement to another detective.[3]

A motion to suppress these statements was denied after a hearing at which the appellant and the homicide detectives connected with his case testified. Appellant testified that he kept telling the officer he was sick, that he had cramps, that his head was "messed up", that he needed to go to a hospital; that he was carried to the hospital, where a nurse "gave me a needle and something to drink"; that he lay on the floor of the police vehicle both en route to and back from the hospital, and that following his return to the station house he was still doubled up with cramps and had the same symptoms as before. The police, he said, were insisting on a statement as a condition of further treatment. The police officers, on the other hand, testified that appellant (who had eaten just before questioning began) seemed normal, alert and responsive; that in accordance with the policy of the Homicide Division to have an alleged drug addict examined by a police surgeon, Moore was so examined when he complained of a stomach ache and a running nose, with the result above given; that after returning from the hospital, Moore

---

[3] The first statement had admitted the appellant's presence at the victim Sawyer's home (the scene of the crime), but denied that he had shot Sawyer; this had been done, he said, by a companion, Picola Dickerson. In the second statement Sawyer was said to have been shot accidentally when he swung a liquor bottle at Moore, hitting a gun Moore was then holding. At trial appellant gave a third version: that it was Sawyer who brandished a pistol, that Moore had tried to disarm him in self-defense, and that the pistol had discharged during the struggle between Sawyer and Moore.

told the officer that "he was not in pain at this time", and that he did not then appear to have any withdrawal symptoms.

A constitutional burden is upon the Commonwealth to show voluntariness of a confession by a preponderance of the credible evidence. *Lego v. Twomey*, 404 U.S. 477, 30 L. Ed. 2d 618 (1972); *Commonwealth v. Smith*, 447 Pa. 457, 291 A. 2d 103 (1972); *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A. 2d 426 (1968). Here the suppression judge obviously chose to believe the testimony of the two police officers as to appellant's condition and ability at the time the challenged statements were given, and not that of appellant. His findings of fact were categorical that appellant, in giving his two statements, was not affected by drugs or narcotics, or by withdrawal therefrom; and that they were "freely, intelligently and voluntarily made." As we observed in *Commonwealth v. Smith, supra*: "An appellate court does not weigh evidence or pass upon the credibility of witnesses, and there is no basis for us to hold as a matter of law that the court's finding of voluntariness of the confession was not adequately supported and well within the court's discretion."

The question of voluntariness was again raised at trial, as appellant had a right to do. *Commonwealth v. Camm*, 443 Pa. 253, 260, 277 A. 2d 325 (1971); *Commonwealth v. Smith, supra*. The purport of his trial testimony was that he was willing to say anything the police suggested to him because he was so sick from narcotic withdrawal. The trial judge in his charge put it squarely to the jury: "if you entertain any reasonable doubt as to the voluntary character of the alleged statement it is your duty to resolve that doubt in favor of the defendant."[4]

---

[4] The judge went on to explain that "whether a confession or statement is voluntary depends largely upon the facts of the case,

As in the case of the findings of the suppression hearing judge, this Court cannot now say, as a matter of law, that the jury's finding of voluntariness was without support in the record. Unlike the situation in *Commonwealth v. Holton*, 432 Pa. 11, 247 A. 2d 228 (1968), relied on by appellant, where the uncontradicted facts in the record, including medical opinion, supported defendant's complaints of severe illness (delirium tremens) at the time of his admission of guilt, the appellant's testimony as to his physical condition was seriously contradicted, and the medical examiner found that Moore, while experiencing withdrawal symptoms, was alert, lucid and fully capable of making a valid statement. On this record we are unable to conclude as a matter of law that "defendant's will was overborne at the time he confessed." *Reck v. Pate*, 367 U.S. 433, 440, 6 L. Ed. 2d 948, 953 (1961).

## II.   Additional Charge on Felony Murder

The theory of the prosecution for murder in this case was primarily based upon the felony-murder doctrine. Moore and his two companions, Carolyn Correcter and Picola Dickerson, all drug addicts, had purchased heroin from Sawyer the night before the fatal shooting. Discovering that the drug was of poor qual-

---

the sex, age, disposition, education and previous training of the defendant, his mental quality and his ability to understand; his physical health and surroundings are matters also to be considered. . . . If he did not receive the [constitutional] warnings or understand them, such as his right to have counsel, then of course the confession would not be a voluntary one. . . . If you find that the defendant was coerced and compelled by reason of force, or violence and threats or otherwise—intimidation of any kind—to make statements or confessions then they would not be voluntary acts and you should ignore them completely and give them no consideration whatsoever." No challenge was made to the propriety or adequacy of the instructions.

ity, they went to Sawyer's residence the next night to obtain a supply of higher quality heroin, or to obtain money, inferentially by robbery if need be, in order to support their drug habits. Sawyer, just after being shot, stated to his wife and two neighbors, "they went upstairs and took my money and came down and shot me anyway."[5]

The court in its charge defined the various degrees of homicide, including felony-murder as a species of murder in the first degree. During its deliberations, the jury requested further explanation of voluntary manslaughter. The court then repeated, in essence, its charge as to murder in the first degree, murder in the second degree, and voluntary manslaughter, but omitted mention of felony murder. This was called to the court's attention by the assistant district attorney, and the court then supplied the omission. The appellant does not challenge the accuracy of the additional instruction, but contends that since it went beyond the jury's request, it amounts to coercion.[6]

---

[5] The quoted language is from the testimony of a neighbor, one Andrew Davis. Similar testimony as to what Sawyer said came from his wife and another neighbor. Appellant has challenged the competency of these declarations as being hearsay, not covered by the *res gestae* exception, since Sawyer was in no position to observe any theft of his money upstairs. See and compare *Commonwealth v. Fugmann*, 330 Pa. 4, 198 Atl. 99 (1938) and *Commonwealth v. Edwards*, 431 Pa. 44, 244 A. 2d 683 (1968). While objection was interposed to the first statement of the deceased as testified to by his wife, the similar statements of two neighbors were not objected to. More importantly, no error was assigned in this respect in the motion for a new trial, and the point was not considered by the court below. As we have repeatedly stated, the Court will not entertain issues of this sort which are raised for the first time on appeal. *Commonwealth v. Kontos*, 442 Pa. 357, 275 A. 2d 389 (1971); *Commonwealth v. Rogers*, 440 Pa. 598, 269 A. 2d 449 (1970).

[6] No express objection was made at trial, counsel for the defendant noting merely that the courts "comments on first degree

We have carefully reviewed the charge and the supplementary instructions on the various kinds and degrees of homicide, and find them to have been careful, accurate and impartial. Supplementary instructions are, of course, common and are contemplated by our rules. See Pa. R. Crim. Proc. 1119(c). Appellant's reliance on *Commonwealth v. Wright*, 444 Pa. 536, 282 A. 2d 323 (1971), is misplaced. There the court, acting not on the request of the jury but that of the district attorney, recalled the jury from its deliberations to give specific additional instructions. We held under the circumstances of that case that this was an unjustified over-emphasis, adverse to the defendant, on the particular point, and had a coercive effect on the jury. We find no such element in the case at bar.

The judgment of sentence of murder in the first degree is affirmed.

---

were voluntary on the court's part, because the request for further instruction . . . was only on voluntary manslaughter." The court in effect treated this statement as an objection, however, observing that he had discretion to expand on the foreman's request and was "not tied to what they ask for". The point was also raised on the motion for a new trial and considered by Judge CHUDOFF in his opinion.