362 A.2d 990
COMMONWEALTH of Pennsylvania
v.
Keith O. SMITH, Appellant (two cases).

Supreme Court of Pennsylvania.

Argued April 2, 1976.

Decided July 6, 1976.

Rehearing Denied Aug. 24, 1976.

Sebastian M. Rainone, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Marrianne Cox, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

PER CURIAM.

Judgments of sentence affirmed.

ROBERTS J., filed a dissenting opinion in which MANDERINO, J., joins.

ROBERTS, Justice (dissenting).

Appellant was convicted after a jury trial of murder in the second degree, robbery and conspiracy. In my view appellant properly advances a novel and interesting question on this appeal which the majority fails to consider.

376

When appellant was questioned concerning these offenses he denied that he shot decedent. Appellant was then asked to take a polygraph test. He signed the printed waiver form used by the Philadelphia police,[1] and before actually taking the test, made an oral admission during what is called the pre-test interview. The polygraph examination was never administered. Appellant contends that his confession should have been suppressed because it was made after he agreed to submit to a polygraph without being advised of the nature of that examination. Appellant attacks the use of the polygraph in the interrogation process and the adequacy of the waiver form used prior to administering the "examination." We are urged to adopt a rule excluding confessions which are obtained after a polygraph examination unless the Commonwealth establishes that, prior to agreeing to take the test, the accused was advised: "(1) [t]he taking of the test is not mandatory; (2) the results of the examination whether positive or negative are

1. The printed form is as follows:

| "POLYGRAPH EXAMINATION AGREEMENT | City of Philadelphia POLICE DEPARTMENT Polygraph Laboratory |
|---|---|

I, ———————————————, do hereby voluntarily and willingly, submit to a lie detector examination in order to show, if possible, the truth and honesty of my statements, and I hereby release the Philadephia Police Department from any and all claims resulting from, or arising out of this examination.

————————————————
Signature

————————————————
Address

————————————————
Date

WITNESSES:

————————————————

————————————————

inadmissible in a court of law as evidence establishing guilt or innocence . . . ; and (3) a favorable test result does not compel the police to release you from a custody."

The merit of this contention appears to have been recognized by Judge Forer despite the denial of post-trial motions. Judge Forer wrote in her opinion:

"The *Miranda* warnings, intended for custodial interrogation fail to inform the defendant of significant legal and factual elements involved in a polygraph test, the most important of which are that the result of the polygraph test are inadmissible in Court. *Commonwealth v. Johnson*, 441 Pa. 237, 272 A.2d 465 [467] (1971); *Commonwealth v. Saunders*, 386 Pa. 149, 125 A.2d 446 [442] (1956); *Commonwealth v. McKinley*, 181 Pa.Super.Ct. 610, 123 A.2d 735 (1956); *Commonwealth ex rel. Riccio v. Dilworth*, 179 Pa.Super.Ct. 64, 115 A.2d 865 (1955), and that the results are of dubious scientific value. If the defendant is lying (assuming that the test is valid, an assumption not accepted by the courts of Pennsylvania) the interrogation customarily is continued despite the right under *Miranda* to stop the questioning at any time. If the test indicates that the defendant is telling the truth (again an assumption unsupported by scientific proof) there is no assurance that the interrogation will cease and the suspect be released. Despite the disingenuous statement on the waiver form, namely that the purpose is ' . . . to show the truth and honesty of my statements . . . ', the suspect is perhaps more likely to be incriminated than exculpated.

"In the case at bar, Detective Curley admitted on cross-examination, that, while the defendant was not told that the test was mandatory, neither was he told that the results were inadmissible in evidence for or against him (N.T. 120). Nor are these facts disclosed in the consent form which a suspect must sign prior to

administration of the test. Moreover, a suspect is, seldom if ever, told that his refusal to take the test may not be disclosed in Court, nor that it may be used to compel continued questioning in violation of the *Miranda* standards.

"The dangers inherent in a polygraph test arise from the false aura of scientific infallibility which surrounds the use of such technological hardware. As is often the case, the unlettered, young or unsophisticated are more apt to be deceived by such 'scientific tests' than the sophisticated and well-counselled suspect.

"Under the general principle of considering the 'totality of circumstances' in determining whether a suspect has made a knowing and intelligent waiver of his rights, *Commonwealth v. Franklin,* supra; *Commonwealth v. Nathan,* supra; *Commonwealth v. Eperjesi,* supra, a similar standard should logically apply to a waiver of rights with respect to a polygraph test."

The House Committee on Government Operations recently issued a sweeping condemnation of the use of polygraph and other lie detector devices. See 19 Cr.L. Rptr. 2187 (1976). The text of the committee report states:

"The Department of Justice continues to maintain the position that the results of polygraph examinations would not be admitted as evidence in the Federal courts. The committee adopts this position and further affirms that since such examinations are considered invalid for evidentiary purposes, there is absolutely no reason for continuing the use of such examinations for investigatory purposes.

. . . . . . . .

"Even if the committee adopted the position of some agencies that the polygraph is useful as a secondary investigatory technique and that the results of a polygraph examination alone are never considered conclu-

sive, the committee finds that the inherent chilling effect upon individuals subject to such examinations clearly outweighs any purported benefit to the investigative function of the agency."

This Court has seen numerous cases in which accused individuals are subjected to polygraph examinations at the behest of interrogating officers. The accused is put in an untenable position. If he refuses to take the test —as he is constitutionally entitled to do—he may be considered to be "hiding" something. If he agrees to take the test there are no safeguards to assure that the test is administered properly or even that he is accurately informed of the test results. Most importantly, the test has never been proven reliable. Whatever the outcome of the test, it can be used to coerce the individual.[2]

In sum, the polygraph has become a tool of psychological coercion that cannot be tolerated consistent with constitutional guarantees that one will not be forced—physically or psychologically, directly or indirectly—to incriminate himself. Unless proper safeguards surround administration of the test, such as those suggested by appellant, any confession obtained through the use, or threatened use, of a polygraph, should be excluded.

The majority avoids reaching the merits of appellant's claim by concluding that the polygraph waiver issue is waived because it was not presented in written post-trial motions. The polygraph waiver form was attacked orally at the argument on post-trial motions. In *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975), this Court stated that "henceforth" issues not presented in

---

**2.** "Again we stress that the modern practice of in-custody interrogation is psychologically rather than physically oriented. As we have stated before, 'Since *Chambers v. Florida*, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716, this Court has recognized that coercion can be mental as well as physical, and that the blood of the accused is not the only hallmark of an unconstitutional inquisition.' "

*Miranda v. Arizona*, 384 U.S. 436, 448, 86 S.Ct. 1602, 1614, 16 L. Ed.2d 694 (1966).

written post-trial motions, in accordance with Pa.R. Crim.P. 1123(a), would not be considered. The practice in many parts of the Commonwealth had been that issues raised orally in post-trial motions were considered.

*Blair* was decided on January 27, 1975. The case was first reported in the West reporter system advance sheets in the issue of March 1, 1975. Contrary to the majority's inclination, I would not hold the Bar or the trial courts responsible for the ruling in *Blair* until it had been reported (March 1, 1975). It would be unrealistic to conclude that the members of the Bar are on notice of our decisions from the moment we decide them even though not actually reported until weeks later.

In this case, the trial ended on February 6, 1975. Post-trial motions were filed on February 13, 1975, well before *Blair* was published. In these circumstances, the issue has not been waived.

Because I am of the view that the merits of the case should be reached, and because I believe the contention is meritorious, I would reverse the judgments of sentence and grant a new trial. I dissent.

MANDERINO, J., joins in this dissenting opinion.