383 A.2d 183

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Julius PUGH, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 14, 1977.

Decided Jan. 26, 1978.

Reargument Denied March 2, 1978.

446

George P. Bannon, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Jane C. Greenspan, Asst. Dist. Atty., for appellee.

Before EAGEN, O'BRIEN, POMEROY, NIX and MANDERINO, JJ.

## OPINION

EAGEN, Chief Justice.

Julius Pugh was convicted by a jury of murder of the third degree. Post-verdict motions were denied and a prison sentence of ten to twenty years was imposed.[1] This appeal followed.

1. Pugh was ordered committed to a mental rehabilitation facility in lieu of incarceration in a correctional institution.

■ Pugh contends he is entitled to a new trial because of certain alleged errors in the prosecution process. The Commonwealth argues these issues have not been preserved for appellate review because Pugh failed to comply with *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975), which requires that assignments of error be presented in written post-verdict motions. We do not accept the Commonwealth's position. The assignments of error were presented to the post-verdict motion court in a written "Memorandum in Support of Motions in Arrest of Judgment or for New Trial," and the court accepted and considered the merit of these assignments of error without objection. Thus, while we do not approve of this practice, *Commonwealth v. Grace,* 473 Pa. 542, 375 A.2d 721 (1977), is controlling and we will consider the issues to be properly before us.

Pugh urges, inter alia, that the trial court erred in denying pretrial applications to suppress certain evidence which was later used against him at trial. Included in this category is evidence of oral and written statements Pugh is said to have made while in police custody. Specifically, Pugh maintains this evidence was obtained under impermissible circumstances, namely, without a prior knowing and intelligent waiver of constitutional rights and that the trial court erred in ruling otherwise. After an examination of the record we are unable to intelligently resolve the merits of this issue and will, for the reasons that follow, remand the record to the trial court for further proceedings.

The record discloses that the answers of the Commonwealth to the pretrial applications to suppress were not filed until the day fixed for the suppression hearing, a date well beyond the time permitted.[2] Because of this, Pugh's counsel requested the suppression court to accept as true all well-pleaded facts in the applications. The request was denied

2. Pennsylvania Rule of Criminal Procedure 308 provides:
"Answers to Pretrial Application
"(a) Answers may be filed not later than seven days after service of the pretrial application, except for good cause shown. Failure to answer shall be deemed an admission of the well pleaded facts averred in the application."

for reasons not made clear.[3]  In overruling the post-verdict motions, the trial court stated the suppression court had "discretion, under Rule of Criminal Procedure No. 20 to disregard the Commonwealth's technical failure to comply with the rules, if it believed the interests of justice so required."

Our research has not disclosed any "Rule of Criminal Procedure No. 20" justifying a disregard of Pa.R.Crim.P. 308(a)'s mandate,[4] and since there was nothing of record to show "good cause" for the late filing of the answers, the suppression court should have accepted as true all of the well-pleaded facts averred in Pugh's applications.[5]  *Commonwealth v. Eller*, 232 Pa.Super. 99, 332 A.2d 507 (1974).

The Commonwealth argues that, even if the suppression court erred in not following the mandate of Rule 308, supra, no prejudice resulted because all of the well-pleaded facts in the applications were eventually accepted as true in the court's adjudication disposing of the applications to suppress.  While this may be correct in part, it is not completely so.

Pugh's claim that he did not knowingly and intelligently waive his constitutional rights before making the challenged statements was based in part [6] on the allegation that on the day "of the interrogation by the police, the defendant (Pugh) had taken an unknown quantity of prescriptive drugs."

**3.** The court did say the district attorney's office was experiencing difficulty with stenographic personnel.  Even assuming such would constitute "good cause shown," there is nothing of record to support this.

**4.** Of course, a rule of procedure adopted by a court of common pleas cannot be used as a means to circumvent our rules of procedure. Pa.R.Crim.P. 1(b).

**5.** We reject the Commonwealth's position that Pugh was required to allege "specific prejudice resulting from the late filing."  No such requirement is set forth in Pa.R.Crim.P. 308.

**6.** Additionally, Pugh alleged he was a functional illiterate and was suffering serious psychiatric problems and had consumed a quantity of alcohol immediately before his arrest and the questioning.

450

In view of the untimely filing of the answers without "good cause shown," the suppression court was required to accept this factual averment in the applications as true. But this the suppression court failed to do. In fact, there is nothing in the court's findings or adjudication to indicate this fact was considered.

■ While the intake of drugs does not necessarily prevent one from knowingly and intelligently waiving constitutional rights, *Commonwealth v. Cornish,* 471 Pa. 256, 370 A.2d 291 (1976), it may well do so. To determine this all of the attending circumstances must be considered, including the type and quantity of the drug, the exact time or times the drug was consumed and whether an impairment of the faculties ensued. The instant record fails to provide this information.

We will, therefore, vacate the judgment of sentence and remand the record to the trial court for a new suppression hearing at which all relevant facts and circumstances are to be explored and considered. Following this, if the Court again determines the challenged evidence was obtained under constitutionally permissible circumstances, it will reinstate the judgment of sentence and Pugh may file a new appeal. But if the Court determines the challenged evidence should have been suppressed, then a new trial should be granted.

It is so ordered.

POMEROY and NIX, JJ., filed dissenting opinions.

JONES, former C. J., and ROBERTS, J., did not participate in the consideration or decision of this case.

POMEROY, Justice, dissenting.

As the opinion of the Court states, the failure of the Commonwealth to file a timely answer to appellant's pre-trial motion to suppress required, in the absence of a showing of a "good cause" for the failure, that the suppression court accept as true all well-pleaded facts averred in the appellant's motion to suppress. See Pa.R.Crim.P. 308. The Court

is of the opinion that, when this is done, there is insufficient evidence to support the conclusion of the suppression court that the statements of the defendant were properly obtained and should be admitted into evidence. I believe, however, that the conclusions of the suppression court were amply supported and would affirm the judgment below. Hence this dissent.

In support of appellant's argument that he did not knowingly and intelligently waive his constitutional rights, Pugh alleged in his motion to suppress that on the "day of the interrogation by the police, [he] had taken an unknown quantity of prescriptive drugs." The majority, purporting to rely on *Commonwealth v. Cornish,* 471 Pa. 256, 370 A.2d 291 (1976) holds that before such a claim may be resolved, a court must determine all the attending circumstances including the "type and quantity of drug, the exact time or times the drug was consumed, and whether an impairment of the faculties ensued." [Ante, at p. 450]. It therefore remands for a new suppression hearing. I think this disposition of the matter is in error.

First, the majority misinterprets what I understand to be our holding in *Cornish, supra.* In that case, this Court stated:

> Cornish, in a related argument would have us rule, analogous to guilty plea situations, that the police should have inquired as to the extent of Cornish's drug intake once they were aware he used narcotics. We decline to create such a per se rule. The issue is one to be resolved by examining the totality of the circumstances, and the circumstances instantly established Cornish was in full control of his will. This is not to say that such an inquiry would not have been a preferable way for the police to have proceeded, but their not having done so does not automatically render the statement involuntary. Cf. *Commonwealth v. McKinney,* 453 Pa. 10, 306 A.2d 305 (1973). 471 Pa. at 268–69, 370 A.2d at 297.

Rather than lending support to appellant's position, therefore, *Cornish* expressly rejects the adoption of a *per se* rule

452

as to what is required of the police where the suspect claims to be under the influence of drugs.

Second, and more importantly, I believe the critical inquiry in cases such as the present is whether the alleged consumption of drugs in any way impaired the ability of the appellant knowingly and intelligently to waive his rights. This is the task of the suppression judge. Thus, in *Commonwealth v. Moore*, 454 Pa. 337, 341, 311 A.2d 620, 622–23 (1973), we stated:

A constitutional burden is upon the Commonwealth to show voluntariness of a confession by a preponderance of the credible evidence. *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *Commonwealth v. Smith*, 447 Pa. 457, 291 A.2d 103 (1972); *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A.2d 426 (1968). Here the suppression judge obviously chose to believe the testimony of the two police officers as to appellant's condition and ability at the time the challenged statements were given, and not that of appellant. His findings of fact were categorical that appellant, in giving his two statements, was not affected by drugs or narcotics, or by withdrawal therefrom; and that they were "freely, intelligently and voluntarily made." As we observed in *Commonwealth v. Smith, supra* : "An appellate court does not weigh evidence or pass upon the credibility of witnesses, and there is no basis for us to hold as a matter of law that the court's finding of voluntariness of the confession was not adequately supported and well within the court's discretion."

In the case at bar, Judge Ivins, presiding over the suppression hearing, made similar categorical findings:

From all the testimony, this Court concludes the defendant did have sufficient capacity to understand what was being said to him and the meaning of any statements.

Accordingly, it is quite clear that when a defendant, as here, has been fully informed of his rights, any reasonable acknowledgment of understanding or a willingness to speak is acceptable; see *U. S. v. Boykin* [C.A.Pa.], 398

F.2d 483, to which certiorari was denied, 393 U.S. 1032 [89 S.Ct. 645, 21 L.Ed.2d 575].

The Court has examined in detail all the circumstances surrounding defendant's admission. We've weighed all the evidence produced concerning this defendant. We conclude that the defendant was sufficiently cognizant of all that was taking place and made the inculpatory statement here involved without counsel and indeed aware, as I see it, of the consequences of an admission or a confession.

Since the suppression court has concluded that Pugh was in possession of his faculties at the time of the waiver of his rights, and since the evidence in the record is sufficient to support such a conclusion,* I see nothing to be gained by remanding the record for the taking of additional evidence which is not critical to the legal conclusion of voluntariness which is here challenged. I would affirm the judgment of sentence.

NIX, Justice, dissenting.

The majority vacates the judgment of sentence because it reaches an issue which was not included in the written post-verdict motions filed by appellant on March 4, 1975. This was more than a month after this Court made it crystal clear in *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975), that after the date of that case, January 27, 1975,* a

---

* The record discloses that the interrogating police officers testified at the suppression hearing that appellant was in no way coerced, that he was responsive and seemed to understand both his rights and their questions, and that he did not appear to be under the influence of drugs. Thus, as in *Commonwealth v. Moore, supra,* we have a case where the suppression court simply choose to believe the testimony of the Commonwealth witnesses that appellant was in sufficient possession of his faculties so as to knowingly and intelligently waive his constitutional rights, regardless of the fact that he may have taken a quantity of prescriptive drugs. It should also be borne in mind that the question of the voluntariness of the confession, in addition to being raised before the suppression court, was also presented to the jury under proper instructions. See *Commonwealth v. Green,* 464 Pa. 557, 347 A.2d 682 (1975), and *Commonwealth v. Camm,* 443 Pa. 253, 277 A.2d 325 (1971).

* Mr. Justice ROBERTS has argued that *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975) should apply not from the date of

defendant could preserve issues for appellate review only by complying with the requirement of Pennsylvania Rule of Criminal Procedure 1123 that all grounds of objection to the verdict be included in written post-verdict motions. The mandate of *Blair* could not have been plainer when we said:

> The practice in some judicial districts of ignoring the requirements of Rule 1123(a) is condemned. Henceforth, issues not presented in compliance with the rule will not be considered by our trial and appellate courts. *Id.* 460 Pa. at 33, n. 1, 331 A.2d at 214, n. 1.

Since *Blair,* this Court has repeatedly emphasized the need to include issues in written motions in order to preserve them for review. In *Commonwealth v. Terry,* 462 Pa. 595, 602, n. 3, 342 A.2d 92, 96, n. 3 (1975), we said, "We again stress that the written post-trial motions filed subsequent to our decision in *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975), will be conclusive on the issues to be considered by the court *en banc* and reviewable by appellate tribunals." The unanimous per curiam opinion in *Commonwealth v. May,* 466 Pa. 524, 526, n. 3, 353 A.2d 815, 816, n. 3 (1975), with all seven justices participating, states, "In *Blair* we held that, thenceforth, nothing less than strict compliance with Pa.R.Crim.P. 1123(a), 19 P.S. Appendix, requiring written post-trial motions, would act to preserve issues raised therein for appellate review." *See also, Commonwealth v. Fortune,* 464 Pa. 367, 371, n. 4, 346 A.2d 783, 785, n. 4 (1975).

Despite the fact that the entire Court in *Commonwealth v. May, supra,* read *Blair* as holding that only strict compliance would suffice to preserve issues for review, the majority is now willing to consider issues even when Rule 1123(a) has not been complied with so long as the issues are presented in a written memorandum to the trial court, and the trial court considers the issues even though they were not

decision, but from March 1, 1975, the date it was first reported in the Atlantic Reporter. *See Commonwealth v. Smith,* 468 Pa. 375, 362 A.2d 990 (1976) (dissenting opinion by Roberts, J., joined by Manderino, J.). However, in this case the post-verdict motions were filed on March 4, 1975, after both the date of decision and the date the case was first reported.

presented in accordance with Rule 1123. The ignoring of Rule 1123 by both trial attorneys and trial courts was precisely what we tried to stop with *Blair,* by an absolute and unequivocal assertion that henceforth non-compliance with Rule 1123 would not be tolerated. The majority's willingness to tolerate non-compliance, after we have re- · peatedly stated that we will not, renders *Blair* meaningless and enforcement of Rule 1123 impossible.

The exception to *Blair* which was created in *Commonwealth v. Grace,* 473 Pa. 542, 375 A.2d 721 (1977), and is applied as "controlling" in this case, not only permits but actually fosters violations of Rule 1123. A trial court which has objections to a verdict presented to it by way of a written memorandum on the day of argument, rather than by written motion within the time limits specified by the rule, knows that it may safely engage in the practice condemned by *Blair* by proceeding to consider such objections on the merits. Under the majority's reasoning, the violation of Rule 1123 by both trial attorney and trial court not only results in no sanctions, but also assures the offending party of full appellate review.

After *Blair,* there can be no excuse for non-compliance with Rule 1123. No new rule was announced in *Blair*; we merely announced that from that day forward the rule already in existence would be strictly enforced. In an effort to be completely fair, we did not insist on strict enforcement of the rule in cases where the relevant events took place pre-*Blair,* because some courts had a long-standing practice of condoning non-compliance which tended to mislead counsel into relying on that practice, *Commonwealth v. Bailey,* 463 Pa. 354, 358, 344 A.2d 869, 871 (1975). But after the clear, unmistakable warning set forth in *Blair,* there can be no claim of unfairness.

The contradictions and difficulties to which post-*Blair* exceptions will lead are apparent in *Commonwealth v. Grace, supra,* 473 Pa. at 546, 375 A.2d at 723, where the four-member majority opinion, immediately after stating it would consider the appellant's claims preserved for review

even though not presented in written post-verdict motions, went on to say, "But we again remind counsel that written post-verdict motions must be filed and these motions must include every assignment of error which counsel wishes to preserve for appellate review." Such warnings will never be taken seriously when they come in the same breath with an assertion that the Court does not intend to enforce Rule 1123, even when violations occur after a specific warning that further violations would not be tolerated.

In *Grace,* the application of the *Blair* exception was not essential to the result, because the judgments of sentence were affirmed, just as they would have been had Grace's claims been deemed waived. The majority today seriously compounds the error in *Grace* by applying this exception to reach an issue which does determine the outcome. Because I believe that this post-*Blair* exception can only lead to confusion among trial attorneys and lower courts, disrespect for the pronouncements of this Court, and further violations of our procedural rules, I dissent.