**Commonwealth v. Sanchez**

*Charles A. Achey, Jr.* and *Edward F. Browne, Jr.,*
*Assistant District Attorneys,* for Commonwealth.
*Theodore S. Danforth, Chief Public Defender,*
and *Thomas G. Klingensmith, Assistant Public*
*Defender,* for defendant.

KREIDER, *S.J.*, July 21, 1978—A jury convicted
defendant, Luis Montez Sanchez, of terroristic
threats and burglary.[1] His motions in arrest of
judgment and for a new trial are before us for dispo-
sition. For the reasons hereinafter set forth they
must be denied and dismissed.

Defendant was convicted May 27, 1977, and on
June 1, 1977, filed post-verdict motions averring
only the usual boiler-plate reasons, viz.—as to the
motion in arrest of judgment—that "the evidence
was insufficient to sustain the verdict of his jury."
In the motion for a new trial, the reasons assigned
were that (1) "The verdict is contrary to the evi-
dence, (2) . . . contrary to the weight of the evidence
and (3) . . . contrary to the law." In the latter mo-
tion, defendant's counsel reserved "the right to file
additional supplemental reasons for a new trial
when the notes of testimony are transcribed and
made available to the defendant."

No supplemental reasons were filed until April 7,
1978, at the conclusion of defendant's oral argu-
ment on the motions. They aver:

---

1. Crimes Code of December 6, 1972, P.L. 1482, 18 C.P.S.A.
§§2706 and 3502 respectively.

"(1) Terroristic Threats, 18 Pa.C.S. Section 2706, is on its face unconstitutionally vague."

"(2) The evidence was insufficient to prove beyond a reasonable doubt that defendant committed the crimes of terroristic threats and burglary."

These supplemental reasons also appeared in defendant's brief.

## QUESTIONS PRESENTED

1. Did defendant waive the right to contest the constitutionality of section 2706 (terroristic threats) of the new Crimes Code by failing to present that issue in compliance with Pa.R.Crim.P. 1123(a)[2] and Com. v. Blair, 460 Pa. 31, 331 A. 2d 213 (1975)?

2. If defendant preserved the right to raise that issue, is the terroristic threats section constitutional?

3. Is the evidence sufficient to sustain the verdicts of the jury?

## DISCUSSION

Non-compliance with Pa.R.Crim.P. 1123(a)

Defendant did not comply literally with Rule

---

2. "Rule 1123 Post-Verdict Motions

"(a) Within ten (10) days after a finding of guilt, the defendant shall have the right to file written motions for a new trial and in arrest of judgment. Only those grounds may be considered which were raised in pre-trial proceedings or at trial, unless the trial judge, upon cause shown, allows otherwise. Argument shall be scheduled and heard promptly after such motions are filed, and only those issues raised and the grounds relied upon in the motions may be argued . . ."

1123(a) nor with the decision in the landmark case of Com. v. Blair, 460 Pa. 31, 331 A. 2d 213 (1975), which held that issues not included in written post-verdict motions in compliance with Pa.R.Crim.P. 1123(a) would not be considered by our trial or appellate courts. We would readily agree with the Commonwealth's contention that defendant did not preserve the constitutionality issue with regard to the terroristic threats section of the Crimes Code—and therefore has waived that issue, but for recent decisions of our Supreme Court subsequent to Blair which considered issues to have been preserved although no written post-verdict motions were filed as required by Rule 1123(a).

The first of these cases is Com. v. Grace, 473 Pa. 542, 375 A. 2d 721 (1977). There, defendant was convicted of second-degree murder and robbery. In an opinion written by Mr. Chief Justice Eagen it is stated p. 546:

"A timely written 'motion in arrest of judgment or for a new trial' was filed in the trial court, but only 'boiler-plate' challenges to the validity of the convictions were advanced in this motion. It did include a request for permission to file 'additional reasons in support of this motion' after the transcription of the notes of testimony but 'additional reasons' were never filed in the form of a supplemental motion. On appeal, several assignments of error are asserted which were not included in the post-verdict motion filed in the trial court and under Commonwealth v. Blair, 460 Pa. 31, 331 A. 2d 213 (1975) may be ruled waived. However, at the time of argument on the post-verdict motion appellant's counsel did file a 'memorandum in support of motion for a new trial' which included all of the assignments of error now advanced and the trial court

accepted and considered the merit of these assignments of error without objection. Under the circumstances, we will consider the issues preserved for our review. We do so because the written 'memorandum' assured certainty in the record and assures us the issues were presented to the post-verdict motion court. But we again remind counsel that written post-verdict motions must be filed and these motions must include every assignment of error which counsel wishes to preserve for appellate review."

To the same effect as Grace is Com. v. Jones, 478 Pa. 172, 386 A. 2d 495 (1978). This was a first degree murder case in which our Supreme Court again speaking through the Chief Justice, stated n. 1, page 176:

"Also, the Commonwealth argues the issues involving the admissibility of Jones' statements are waived because they were not set forth in post-verdict motions, citing Commonwealth v. Blair, 460 Pa. 31, 331 A. 2d 213 (1975). However, the issues were set forth in a brief presented to the post-verdict motion court and are therefore preserved for review. Commonwealth v. Pugh, 476 Pa. 445, 383 A. 2d 183 (1978) (plurality opinion, Eagen, C.J., joined by O'Brien and Manderino, JJ: dissenting opinion, Pomeroy, J.). See Commonwealth v. Perillo, 474 Pa. 63, 376 A. 2d 635 (1977); Commonwealth v. Grace, 473 Pa. 542, 375 A. 2d 721 (1977) . . ."

Rule 1123(a) was enforced and Com. v. Blair, supra, was followed in Com. v. Waters, 477 Pa. 430, 384 A. 2d 234 (1978). There, appellant made no effort to offer a written amendment or supplement to the original motions filed. It was held that the

fact that the issue was presented orally before the court below did not justify ignoring the admonition given by the Supreme Court in Blair.

In light of these decisions, we cannot sustain the Commonwealth's contention that defendant has not preserved the issue of the constitutionality of the terroristic threats section of the new Crimes Code.

## Is Section 2706 (Terroristic Threats) "On Its Face Unconstitutionally Vague"?

We think this question must be answered in the negative. The only reported appellate court decision concerning the terroristic threats section that has come to our attention is Com v. White, 232 Pa. Superior Ct. 176, 335 A. 2d 436 (1975). There the Superior Court in an opinion written by Judge Cercone unanimously sustained a conviction for conduct which corrupted or tended to corrupt the morals of a minor, attempted indecent assault and terroristic threats. The latter offense is defined as follows:

"Section 2706—Terroristic Threats.

"A person is guilty of a misdemeanor of the first degree if he threatens to commit any crime of violence with intent to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience."

In the White case the Superior Court in sustaining a conviction for terroristic threats, stated p. 184:

"Thus, the Commonwealth must prove that a threat to commit a crime of violence was made, and

that such threat was communicated with an intent to terrorize.

"In the instant case, we hold that the totality of the appellant's conduct, namely, carrying the young girl into an abandoned house, holding her by the shoulders, telling her he was going to grab her, and raising her skirt, constituted a threat to commit the crime of rape . . ."

In the present case defendant, as stated, contends section 2706 "is on its face unconstitutionally vague." It is true that it was so held in Com. v. Howell, 1 D. & C. 3d 644 (1976). There the court pointed out that in White appellant made no constitutional challenge to the validity of the section "[and that the appellant] in White contended only that there was insufficient evidence to establish the requisite intent to terrorize . . ."

The court in Howell concluded that section 2706 is so vague and indefinite that, p. 649:

"A citizen would be without fair notice and warning of what is to be punished, and would be forced 'at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what that State commands or forbids.' Lanzetta v. New Jersey, 306 U.S. 451, 453 (1939). Section 2706 fails to so inform on its face, and neither court interpretation nor legislative history supplies the missing definition. This section is therefore held to be unconstitutional on its face; thus a demurrer was sustained to the indictment."

In our judgment section 2706—terroristic threats—is no more vague and indefinite than, for example, the crime of corrupting or tending to corrupt the morals of a minor: 18 C.P.S.A. §3125. It is

noteworthy that the constitutionality of that statute and its predecessors had never been challenged successfully. In Com. v. White, supra, appellant contended that his conduct did not constitute the crime of corrupting or tending to corrupt the morals of a minor. In rejecting this contention the Superior Court commented on the void for vagueness doctrine and said p. 183:

"In Commonwealth v. Meszaros, 194 Pa. Superior Ct. 462, 465 (1961), this Court, speaking through Judge Ervin, stated:[3] '"Tending to corrupt" like "contributing to delinquency," is a broad term involving conduct toward a child in an unlimited variety of ways which tends to produce or to encourage or to continue conduct of the child which would amount to delinquent conduct.' (citations omitted) . . . In Commonwealth v. Randall, 183 Pa. Superior Ct. 603 (1957), cert. denied, 355 U.S. 954 (1958), this Court held that the former statute (18 P.S. §4532) *was not void for vagueness.* (Emphasis supplied.) Judge Ervin, again speaking for the Court, there stated: 'The common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it.' 183 Pa. Superior Ct. at 611. We are convinced that the instant appellant's actions sufficiently constituted the proscribed conduct."

"3. Afterwards President Judge of the Superior Court."

In the White case, the Superior Court also addressed itself to defendant's contention that "the evidence was insufficient *as a matter of law* to

constitute the crime of terroristic threats" and concluded that "[t]he trial court properly determined that appellant's intent to terrorize was proved beyond a reasonable doubt in view of his actions toward the complainant. In light of the facts and circumstances present in the instant case, there was sufficient evidence to convict the appellant for the crime of terroristic threats," supra, 232 Pa. Superior Ct. at pp. 183, 185. (Emphasis supplied.)

We are convinced that even though counsel for defendant in the White case did not specifically challenge the constitutionality of the terroristic threats section of the new Crimes Code, the Superior Court would not have sustained the conviction on that charge—and without a single dissent—if it believed that, as defendant in the case at bar belatedly contends, section 2706 "is on its face unconstitutionally vague."

## SUFFICIENCY OF THE EVIDENCE

We think the evidence is sufficient to sustain the jury's verdicts finding defendant guilty of terroristic threats and also of burglary.

In Com. v. White, supra, it was held that to sustain a terroristic threat charge (18 C.P.S.A. §2706) the Commonwealth must prove, as heretofore noted, that (1) a threat to commit a crime of violence was made, and (2) that said threat was communicated with an intent to terrorize. In the present case, the Commonwealth's evidence showed that defendant at about 10:30 p.m. on February 10, 1977, telephoned complainant and after calling her obscene names, said he was coming out to her place and that she had better open her door and that there had better not be anyone there beside her "because I am going to kill him, I am going to

kill you, I am going to take care of you, I am not finished with you yet." Defendant again told Mrs. Kules he would kill her and that he would arrive at her residence in two hours. She further testified that about 12:30 a.m. on February 11, defendant appeared at her residence, pounded on the door and persistently rang the bell. He then went to the sliding glass patio door and ". . . was calling my name, telling me you better open this door or you are going to be sorry, I am going to kill you, you better open this door."

Clearly the first element—a threat to commit a crime of violence—was proved. Also proved was that "such threat was communicated with an intent to terrorize." In light of defendant's conduct, it must be concluded that his threats to Mrs. Kules were "communicated with an intent to terrorize." In this he was completely successful as is shown by the frantic call made by Mrs. Kules to the police for help, her hiding in her own house and her flight after defendant pried open the patio door and rushed up to the second floor. To avoid discovery she ran outside clad only in her nightgown and then proceeded in her bare feet through the snow in a futile effort to summon help in the neighborhood before the police arrived. Further justification for her fear of death or grievous bodily harm was the evidence that in the past defendant had wrapped a telephone cord around her neck when she tried to have him leave her home.

Finally, defendant contends that in the charge of burglary, the Commonwealth failed to prove that he entered the victim's home with the intent to commit a crime therein. In view of the evidence that defendant broke into the residence in the middle of the night amidst threats that he was going to

kill Mrs. Kules, the jury could have drawn the inference beyond a reasonable doubt that defendant's intent was at least to inflict serious bodily harm upon her.

For the foregoing reasons, defendant's post-verdict motions cannot be sustained.

### ORDER

And now, July 21, 1978, defendant's motions in arrest of judgment and for a new trial are denied and dismissed and the district attorney is directed to present defendant, Luis Montez Sanchez, for sentence.