DeVito *v.* Civil Service Commission, Appellant.

355

Argued April 27, 1961.  Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Levy Anderson,* First Deputy City Solicitor, with him *Matthew W. Bullock, Jr.,* Assistant City Solicitor, *James L. Stern,* Deputy City Solicitor, and *David Berger*, City Solicitor, for Civil Service Commission, appellant.

*Samuel C. Tabbey* and *Ray E. Machen,* with them *Bernard J. Lemisch,* for appellees.

OPINION BY MR. JUSTICE BELL, June 26, 1961:

The present appellees—DeVito and Stape—were police officers in the City of Philadelphia. On the night of August 21, 1958, DeVito was assigned to investigate the premises of the Foland Furniture Company where a door had been found ajar by the night watchman. He proceeded to the building in a police car and shortly after his arrival there was joined by Stape. DeVito, Stape and the night watchman then entered the building together. Finding nothing of a suspicious nature other than the open door DeVito thereupon entered the office of the furniture company and telephoned his report to his superior. During the time he was in the building DeVito was in full view of Stape and the watchman. DeVito, Stape, the watchman and other policemen who had arrived prior to DeVito and Stape then left the premises and secured the door.

The next morning DeVito returned the police car to his district police station. The car was then assigned to another officer who inspected its interior and found it clean. This policeman then took the car out on patrol. When he brought the car back three hours later he left it for a few minutes. Upon returning to the car he found a rolled up piece of paper in full view on the floor of the car. The paper was a check in the amount of $47 payable to the Foland Furniture Company. Upon investigation it was discovered that a quantity of cash and checks had been taken from a cabinet in the office of the furniture company. An investigation followed in which all of the policemen who had visited the premises, and the Company's employees were questioned. All of them denied any knowledge of the missing cash or checks.

The interrogation of DeVito and Stape was lengthy and the proceedings were recorded. Both policemen readily answered all questions and in addition gave de-

tailed written statements of their activities in connection with the incident. They were then asked to submit to a polygraph or "lie detector" test which they at first agreed to do. Later upon advice of counsel they withdrew their consent and so informed the Commissioner of Police. Thereupon the Commissioner suspended them for 30 working days. During the period of their suspension the Commissioner ordered them to submit to the lie detector test or be dismissed from the force. They again refused and were dismissed. The reasons given for the dismissals were (1) conduct unbecoming an officer, (2) violation of §10-110 of the Philadelphia Home Rule Charter, (3) insubordination, and (4) neglect of duty.

DeVito and Stape each took an appeal to the Philadelphia Civil Service Commission. After a hearing, the Civil Service Commission filed an opinion in which it dismissed all of the charges against them *except the ones pertaining to insubordination and neglect of duty based on the policemen's refusal to submit to the polygraph tests.* Thereupon the policemen appealed to the Court of Common Pleas pursuant to the provisions of §7-201 of the Philadelphia Home Rule Charter which pertinently provides: ". . . Findings and decisions of the [Civil Service] Commission and any action taken in conformance therewith as a result thereof shall be final and there shall be no further appeal on the merits, but there may be an appeal to the courts on jurisdictional or procedural grounds."

The Court below held the dismissals to be procedural error and a denial of due process. The lower Court then reversed the Order of the Civil Service Commission and ordered the reinstatement of the men with full pay. The City of Philadelphia took these appeals.

It is the general rule that "Where a statute expressly provides that there shall be no appeal or that the decision of an administrative agency or of a Court shall

be final or conclusive and not subject to review 'the scope of appellate review is limited to the question of jurisdiction and the regularity of the proceedings; the merits of the controversy cannot be considered even though the interpretation given to the facts or the law by the governmental agency or the court below may have been erroneous:' " *Dauphin Deposit Trust Co. v. Myers,* 388 Pa. 444, 460, 130 A. 2d 686; *Greensburg School District Appeal,* 403 Pa. 243, 245-246, 169 A. 2d 774; *Scott Township Appeal,* 388 Pa. 539, 130 A. 2d 695; *Kaufman Construction Co. v. Holcomb,* 357 Pa. 514, 55 A. 2d 534; *White Township School Directors Appeal,* 300 Pa. 422, 150 A. 744. This general rule is equally applicable where the scope of judicial review is limited by the Philadelphia Home Rule Charter: cf. *Perry v. Civil Service Commission,* 403 Pa. 643, 170 A. 2d 580; *Addison Case,* 385 Pa. 48, 122 A. 2d 272.

However, there are two exceptions to this general rule. The first is where the administrative agency or lower Court has exceeded those powers possessed by it: *Dauphin Deposit Trust Co. v. Myers,* supra, page 462; *Board of Governors v. Agnew,* 329 U.S. 441, 444; *Republic Steel Corp. v. National Labor Relations Board,* 311 U.S. 7, 13. In *Dauphin Deposit Trust Co. v. Myers,* supra, the Court said (at page 462): "However an important point has been overlooked. Neither the decisions hereinabove cited nor the language of the opinions therein precludes this Court from reversing an order of an administrative agency or a judgment, order or decree of a lower Court, where an excess of powers, i.e., powers beyond those granted or possessed, was exercised by such an agency or lower Court. This is such a case and for the reasons hereinabove set forth at length we must reverse the order of the Department of Banking. Cf.: United States v. Walker, 109 U.S. 258, 266; Bigelow v. Forrest, 9 Wall. 339; Ex parte Lange, 18 Wall. 163."

In *Board of Governors v. Agnew,* supra, the Court, speaking through Mr. Justice DOUGLAS, said (page 444): "First. The Board contends that the removal orders of the Board made under §30 are not subject to judicial review in the absence of a charge of fraud. It relies on the absence of a charge of fraud. It relies on the absence of an express right of review and on the nature of the federal bank supervisory scheme of which §30 is an integral part. [Citing cases]. A majority of the Court, however, is of the opinion that the determination of the extent of the authority granted the Board to issue removal orders under §30 of the Act is subject to judicial review and that the District Court is authorized to enjoin the removal if the Board transcends its bounds and acts beyond the limits of its statutory grant of authority. See American School of Magnetic Healing v. McAnnulty, 187 U.S. 94; Philadelphia Co. v. Stimson, 223 U.S. 605, 620; Stark v. Wickard, 321 U.S. 288, 309-310."

The second exception is where individual rights or property rights ordained or guaranteed by the Federal or State Constitution have been violated by an administrative agency or by a lower Court: *St. Joseph Stock Yards Co. v. United States,* 298 U.S. 38, 52. See also *Crowell v. Benson,* 285 U.S. 22, 56; *Annenberg v. Roberts,* 333 Pa. 203, 2 A. 2d 612.

The sole ground for the dismissal of the two policemen by the Police Commissioner, which was affirmed by the Civil Service Commission, was their refusal to submit to polygraph or "lie detector" tests, although they were willing to and freely did answer, orally and in writing, all questions put to them.

The Philadelphia Civil Service Regulations provide §17.02: "An employee in the civil service may be dismissed for *just cause* at any time by the appointing authority . . ." "Just cause" is not defined. However, nowhere in the City Charter, the City Ordinances, the

Civil Service Regulations, or the Police Department regulations is there a provision which authorizes the Police Commissioner or the Civil Service Commission, expressly or by implication, to force a city employee to submit to a polygraph test or authorizes a dismissal for refusal to take such a test. For this reason neither the Police Commissioner nor the Civil Service Commission had the authority to require the test nor to discharge appellees for refusal or failure to take the test. It follows that both the Commissioner and the Civil Service Commission exceeded their powers to dismiss for "just cause".

We note further that the scientific accuracy or infallibility of the lie detector has not been recognized by our Court. The use of such a test is judicially unacceptable both in this Commonwealth and by the general current of decision throughout the United States: *Commonwealth v. Saunders,* 386 Pa. 149, 156-157, 125 A. 2d 442; *Commonwealth v. McKinley,* 181 Pa. Superior Ct. 610, 123 A. 2d 735; *Commonwealth ex rel. Riccio v. Dilworth,* 179 Pa. Superior Ct. 64, 115 A. 2d 865. See also: Annotation, 23 A.L.R. 2d 1306. We have therefore ruled that evidence of the willingness or unwillingness or refusal of an accused to submit to such a test is inadmissible: *Commonwealth v. Saunders,* supra. In view of these decisions we cannot approve a refusal to submit to such a test as "just cause" for discharging a civil service employee.

Order affirmed.