## Curry v. Philadelphia Civil Service Commission

*Bernard L. Lemisch*, for appellant.

*Edward G. Bauer, Jr.*, City Solicitor, for respondent.

BARBIERI, J., June 27, 1969.—Before this court is an appeal by Thomas Curry, retired police captain,

from the action of the Philadelphia Civil Service Commission in dismissing his appeal from its approval of a determination that his disablement from performance of duty was not service-connected. Proceedings were had before appellant's appointing authority, the Philadelphia police commissioner, and before the civil service commission, under provisions of Philadelphia civil service regulation 32, which provides a comprehensive system and program for dealing with the city's employes who are separated from their civil service positions because of disability.[1] Set out in detail are procedures for disability determinations and benefits with the right of appeal to the commission from a determination as to disability made by the employe's department head, his "appointing authority", after hearing. The principal issue here is as to the extent and nature of such an employe's right to have the courts review the action of the civil service commission.

Argument on a motion to quash, filed by the city of Philadelphia, was heard by this court together with argument in support of the appeal on the merits, and decision on both was reserved.

Obviously, consideration of the appeal and the motion to quash requires some examination of the applicable civil service regulations. In this inquiry we note first that the civil service system of Philadelphia is authorized under chapter 2 of the Philadelphia Home Rule Charter,[2] section 7-201 of which is particularly

---

1. This Philadelphia Civil Service regulation provides an exclusive disability program for Philadelphia, superseding statewide statutory enactments as to disabled, uniformed employes of municipalities: Ebald v. Philadelphia, 7 D. & C. 2d 179, affirmed 387 Pa. 407 (1956).

2. Adopted by the electors of Philadelphia on April 17, 1951, pursuant to authorization by the General Assembly of Pennsylvania in the Act of April 21, 1949, P. L. 665.

pertinent because it has to do with appeals. It reads, in part, as follows:

"Findings and decisions of the Commission and any action taken in conformance therewith as a result thereof shall be final and there shall be no further appeal on the merits, but there may be an appeal to the courts on jurisdictional or procedural grounds."

On the question of the timeliness of Curry's appeal, we find, on reference to the Pennsylvania Rules of Civil Procedure, that our supreme court has laid down therein rules for appeals from administrative agencies, including appeals from civil service bodies, establishing in rule 4 that such appeals must be taken "within thirty (30) days after the service of an adjudication by an agency upon a party. . . ". Also, Pennsylvania Rule of Civil Procedure No. 8, in delineating the "Scope of Appellate Review", sets forth the following:

"Appeals shall be heard by the court upon the record and the exceptions filed thereto. No question shall be heard or considered by the court which was not raised at the hearing before the agency, except

(a) questions involving the validity of a statute or the procedure before the agency;

(b) questions involving the jurisdiction of the agency over the subject matter of the adjudication; and

(c) questions which the court is satisfied that the appellant could not, by the exercise of due diligence, have raised before the agency. If, upon the hearing before the court it is satisfied that any such additional question should be so raised it shall remand the record to the agency for further hearing on the additional question.

"The court may *in any case* remand the record to the agency for further proceedings if it deems the same necessary." (Italics supplied.)

Now, reference to the record brought up to us reveals that the praecipe for writ of certiorari to the civil service commission was not issued until December 31, 1963, whereas the decision of the civil service commission was filed and mailed on April 9, 1963. It is evident from this that the appeal before us is unquestionably untimely; and that, as we are well aware, under such circumstances there would normally be no jurisdiction in this court to hear the appeal on the merits. Indeed, if there is a lack of such jurisdiction, it may not even be supplied by stipulation or agreement of the parties: Commonwealth v. Yorktowne Paper Mills, Inc., 419 Pa. 363 (1965). The question remains then whether appellant in this case is entirely without recourse, or whether, if his contentions have merit, as they appear to have, some other remedial avenue may still be open to him.

Referring specifically to the last paragraph of Pa. R. C. P. No. 8, the question arises: Does the power to remand "in any case" include cases in which the court has no jurisdiction to hear the appeal in the first place? Logically, it would seem that the court may not remand something over which it has no jurisdiction in the first place. It is evident, therefore, that this court may not even remand, unless there is something before it which has been brought there in a timely manner. Our inquiry then is whether or not there remains something that still lives in Curry's case which can support remedial action by this court. Having carefully studied the entire record in the light of the applicable civil service regulations and their purpose, we have concluded that there is support for a remand order by this court, in order to afford the civil service commission and/or the appointing authority an opportunity for further consideration of this appellant's complaints.

Turning now to the civil service commission record

we find clear indications that the commission's decision was directed by, and founded upon, a misconceived view of its powers and of the competent evidence in the record. As previously noted, on the question as to the disability of a policeman, the police commissioner, the appointing authority, first holds a hearing and makes a determination. From this, there is a right of appeal under the regulation to the civil service commission.

Although section 32.12 of regulation 32 contains no provision for review of a civil service decision under that regulation, it is obvious that the separation benefits provided therein are part and parcel of the employe's civil service rights on dismissal and demotion, including an employe permanently separated from his position and employment because of disability. Since this is so, the disabled employe is clearly entitled to the protection of the dismissal and demotion safeguards provided in section 7-201 of the Philadelphia Home Rule Charter quoted above, and in the "dismissal, demotion and suspension" provisions of Philadelphia civil service regulation 17. We note that, under section 17.062 of the latter regulation, appeals to the courts are permitted in conformity with the home rule charter provision, and are similarly limited. But section 17.063 also provides for rehearings after decisions of the commission. These may be granted by the civil service commission on application filed with the commission not later than 30 days after the prior decision was entered. This rehearing privilege is limited to questions: (a) whether the Commission "based its decision on an error of law," (b) whether there was "no evidence before the Commission to sustain a finding of fact necessary to the validity of the decision," and (c) after-discovered evidence. Other procedural requirements are set forth, but we are satisfied that these need not be adverted to in this opinion.

Bearing in mind this rehearing remedy, we find that on April 15, 1963, appellant filed with the commission, in letter form, a formal exception or protest to the board's decision of April 9, 1963, copies of which were forwarded to the police commissioner, the deputy police commissioner, a councilman, and appellant's personal counsel, Bernard L. Lemisch, Esquire. This letter was made part of the official record by the commission on April 16, 1963. While there is some emotional and otherwise legally inappropriate comment in this letter, the following portion is significant:

"You state in your summary that the experts disagree as to the cause of the disability. I am strongly of the opinion that any reasonable person would agree that Dr. Likoff and Dr. Beloff definitely disproved the opinion of Dr. Gelfand, that my disability was caused by arteriosclerosis and proved by reliable evidence, that the injury I sustained in October, 1960 was and is the cause of my present condition.

"It is stated further that 'under the circumstances, how can we say the appointing authority erred in determining that one physician rather than the other was correct.' I would like to point out a very important factor. When Commissioner Brown made his determination he, first, did not have Dr. Likoff's opinion, and second, he made his decision solely on the basis of Dr. Gelfand's report. This, I think you will agree is a fact, for he made his determination after the first Administrative hearing, the tapes of which were so garbled that it was necessary to hold a second Administrative hearing, so that the testimony on my behalf could be recorded. In view of this fact it would appear, again to any reasonable person, that to base your opinion on what Commissioner Brown did, was not only unfair and inconsistent with rulings in similar cases, but not in accord with the facts and competent medical opinions."

It is certainly evident that these averments in the letter amount to a plea for reconsideration, an inartistic request in layman's terms for the rehearing relief provided under sections a and b of civil service regulation 17.0631, since appellant's averments amount to complaints that the commission has "based its decision on an error of law", and that "there was no evidence before the commission to sustain a finding of fact necessary to the validity of the decision." Not only does this provide a request for further consideration at the commission level, but it also voices a complaint that raises issues which are within the power of this court to review on appeals from civil service decisions, because it alleges errors of the commission on "procedural grounds."[3] Furthermore, this procedural or lack of due process complaint is included in the appellant's exceptions filed on this appeal, particularly no. 11.[4]

In passing, it should be noted that procedural steps before the commission are quite informal, and applications for relief, such as appeals to the commission from rulings of appointing authorities, are by a simple letter placed in the regular mail, signed either by the appellant or his counsel.

Considering now appellant's principal complaint in his letter to the commission of April 15, 1963, we note that he has partially, but correctly, quoted from the determinative paragraph in the commission's opinion of April 9, 1963, which reads as follows:

3. Philadelphia Home Rule Charter, section 7-201.

4. "2. The Commission erred in confirming the action of the Police Commissioner dismissing appellant from his employment.

"6. The Commission erred in finding that the Police Commissioner did not abuse his authority by dismissing the appellant.

"7. The Commission erred in dismissing the appellant's appeal.

"11. Said Appellant further avers that the Commission has denied him administration of due process of the law, contrary to Federal and State Constitutions."

"In summary, each of the experts, acting without the possibility of laboratory confirmation, analyzed the clinical picture and the history by deductive reasoning, and arrived at a different result, Dr. Gelfand concluding that the appellant's condition is attributable to arteriosclerotic heart disease and Dr. Likoff that it is attributable to a myocardial contusion. Under the circumstances, how can we say the appointing authority erred in determining that one physician rather than the other was correct?"

Appellant is quite right in his contention that Dr. David Gelfand, a witness for the city in the civil service commission hearing, did not testify before the police commissioner, although his report was submitted to the police commissioner on September 26, 1962. Furthermore, it is also true that Dr. Lawrence Meltzer did not testify before the police commissioner, but only submitted a report. More significant is the fact that Dr. Meltzer simply stated medical facts and offered no opinion at any time on the main question as to what, if any, relationship there might be between appellant's heart disability and his employment. Apparently, the only testimony actually adduced before the police commissioner is that of Dr. Beloff, who did unequivocally relate Captain Curry's disability to the accident of October 5, 1960. Thus, the only evidence to the contrary on which the police commissioner could have based his decision against this testimony of causal relationship would have to have been that contained in the two ex parte, unsworn reports of city physicians whose statements were not subject to cross examination. One of these reports contained the opinion that there was no service relationship.

When the case came before the civil service commission, it is true that there the testimony of Dr. Gelfand was taken, but, here again, Dr. Meltzer was not called and only his report was submitted. Contrary to

this somewhat dubious evidence for the city, appellant adduced the testimony of three physicians, all subject to examination and cross examination: Dr. Beloff, Dr. Flaherty, and appellant's principal expert, Dr. William Likoff, who, as the commission stated, "gave his opinion that the accident of October 5, 1960 very definitely contributed to appellant's heart condition." Bearing in mind that Dr. Likoff did not testify before the police commissioner, nor was any report by him submitted to that appointing authority, it is understandable that appellant took exception in his letter to the commission's apparent misconception that the police commissioner, in deciding against Curry, did so on the basis of the conflicting testimony of Dr. Gelfand and Dr. Likoff, neither of whom had appeared before him. It will be noted that the commission referred to this conflict and then concluded: *"Under these circumstances,* how can we say the appointing authority erred in determining that one physician rather than the other was correct?"

In short, to affirm the decision of the police commissioner on the assumption that he reached it by a determination of which of two physicians' conflicting views was to be accepted, when one of the two opinions was not even brought to his attention, at best is a procedural misconception, in connection with the commission's fact-finding function, that calls for attention and clarification; either by it or by the appointing authority.

Furthermore, we are at a loss to account for the failure of the commission to comply with the terms of section 32.123 of the regulation which reads as follows:

"32.123 The Commission will not hear on appeal any evidence not presented to the appointing authority or the Medical Board, as the case may be, prior to

the determination being appealed from unless such evidence was not reasonably capable of being so presented at that time. *If the Commission determines additional evidence should be received the case will be referred back to the appointing authority* or the Medical Board *to receive it and reconsider the determination in light of it.*" (Italics supplied.)

This provision makes good sense and a remand by the commission to Police Commissioner Brown, in order to have him reconsider the case in the light of new testimony taken before the commission, such as that of Dr. Likoff, would have not only recognized the obvious validity of Captain Curry's complaint, but would have carried out the simple, logical, and due process mandate in the civil service commission's own civil service regulation.

We conclude that, whether we consider appellant's letter of April 15, 1963, as an application for rehearing under section 17.063 of the regulations, as a request for a remand that is mandatory under section 32.123, or as simply some form of exception, it is evident that the appeal to this court should not be quashed, and that a remand is appropriate and should be ordered. While it is true that a court lacks jurisdiction on a late appeal, and must so declare even sua sponte, nevertheless, before a motion to quash is granted it must be clear beyond question that the appeal was untimely. Assuming that we correctly conclude that appellant's letter of April 15, 1963, amounts to an application for relief, we find no indication in the record of any disposition of this plea by the commission, or any answer or other notice to Curry that would apprise him of the commission's attitude with regard to his complaint. Of course, without notice of a determination or even any rejection of the plea, there would be no commission action against

which the appeal time could run; and we cannot assume that the application or exception was dismissed, absent any evidence in the record that this took place. On the other hand, the action of the commission in making it an official part of the record indicates that it was not ignored. It was simply not acted upon, and the commission's failure to advise of its inaction leaves the questions raised therein still in a state of abeyance. It would seem then that the instant appeal is more premature than untimely. See Commonwealth v. Yorktowne Paper Mills, Inc., supra.

If the views of this court in construing Philadelphia's civil service regulations concerning separation and disability benefits for its employes appear to transcend the normal bounds of liberality, let it be noted that civil service regulation 32, like other legislative provisions which provide workmen's compensation for disabled employes is remedial and is to receive a liberal construction: Pater v. Superior Steel Company, 263 Pa. 244, 264 (1919); Ottavi v. Timothy Burke Stripping Co., 140 Pa. Superior Ct. 389, 395 (1940); Uditsky v. Krakovitz, 133 Pa. Superior Ct. 186, 189 (1938); Petrovan v. Rockhill Coal & Iron Co., 130 Pa. Superior Ct. 58, 64 (1938).

Since we are not satisfied that the civil service privileges, which appellant claims, have been denied to him properly and by procedural due process, a remanding order will be entered. See DeVito v. Civil Service Commission, 404 Pa. 354 (1961); O'Peil v. State Civil Service Commission, 424 Pa. 151 (1967).

## ORDER

And now, June 27, 1969, it is ordered that the record in this case be remanded to the civil service commission of the city of Philadelphia for referral by it to the appointing authority, the police commissioner of Philadelphia, and for such further proceedings as are consistent with this opinion.