514 A.2d 964

Allegheny County Police Association and Thomas Boyle, Trustee Ad Litem, Appellants *v.* County of Allegheny, Appellee.

Argued October 10, 1985, before Judges MACPHAIL and DOYLE, and Senior Judge BARBIERI, sitting as a panel of three.

*Ronald P. Koerner, Gatz, Cohen, Segal and Koerner,* for appellants.

*Thomas H. M. Hough,* Assistant County Solicitor, with him, *James J. Dodaro,* County Solicitor, for appellee.

OPINION BY JUDGE DOYLE, September 5, 1986:

This is an appeal by the Allegheny County Police Association (Association) from an order of the Court of Common Pleas of Allegheny County setting aside an arbitrator's award which award had sustained the Association's grievance that the County of Allegheny (County) had violated its agreement with the Association by failing to pay a minimum of four hours pay at overtime rates to employees required to make court appearances at times outside their regularly scheduled shifts.

This dispute arises over the interpretation of the provisions of a collective bargaining agreement entered into for the period from July 1, 1981 to December 31, 1983 pursuant to the Act of June 24, 1968, P.L. 237, *as amended,* (Act 111) 43 P.S. §§217.1-217.10. Article XVII of this agreement, which is the subject of this litigation, reads in pertinent part as follows:

## Court Appearances

1. For the purposes of this Article, Court Appearances shall include any and all appearances before courts of record, district justices, magistrates, governmental agencies having subpoena power and meetings with the district attorney. or an assistant district attorney where the police employee's attendance is required as a result of and arising out of the performance of his duties as a police employee.

2.   Police employees shall be reimbursed for parking and other expenses directly related to attending court.

3.   In the event a police employee is required to make a court appearance on a regularly scheduled work day, he shall be compensated for his appearance in the same manner as he is compensated for the performance of any other police duty except for the reimbursement of expenses set forth in paragraph 2, above, and for any overtime associated with said court appearance for which he would be compensated in the manner set forth in this Article.

\* \* \* \*

5.   For the purpose of this Article, overtime for court appearances shall be deemed generated when a police employee is required, as the result of a court appearance, to work more than eight hours in any day or in excess of forty hours in any week, or is required to make a court appearance during his vacation or during time off between shifts. When a police employee is called back to duty to make a court appearance, the employee shall be deemed to have worked a minimum of four hours for each court appearance.

6.   A police employee's work schedule, once the schedule has been posted, shall not be altered for the purpose of avoiding overtime compensation for court appearances.

A question arose as to the proper payment for court appearances which occurred shortly before or shortly after an employee's regular shift had begun or ended. The County took the position that in such instances an employee should be paid overtime for the actual number of hours expended. Thus, to utilize the example set

forth by the trial court in its opinion "in the case of the patrolman whose shift ended at 7:00 A.M. and who had to report to a 9:00 A.M. hearing, if the hearing concluded at 10:00 A.M. he received three (3) hours overtime. The patrolman who made a court appearance two (2) hours immediately preceding his shift would receive two (2) hours overtime." The Association maintains that both of these situations constitute call backs to duty and hence the employee in such situations should receive four hours of overtime pay.

The arbitrator first noted the County's practice of paying four hours overtime for *some* types of court appearances and determined that there was no rationale for treating different types of hearings differently since Article XVII makes no distinctions. He also wrote:

> Certainly if an employee's scheduled shift stops at 7:00 a.m. and he has nothing to do and is permitted to go where he pleases up until a 9:00 a.m. appearance, he is off duty from 7:00 to 9:00 and returns to duty at 9:00. He may not be 'called back' in the sense that he is telephoned at home to return to duty, but essentially it is the same thing.

Subsequent to the arbitrator's decision, the County petitioned the arbitrator, pursuant to Section 7311 of the Uniform Arbitration Act (U.A.A.), 42 Pa. C. S. §7311, to modify the award, which, based upon the limitations in Section 7311 and Section 7315, 42 Pa. C. S. §7315, he declined to do. The County then petitioned the court of common pleas for review of the arbitrator's award pursuant to Section 7314 of the U.A.A., 42 Pa. C. S. §7314.

The trial court began its analysis by citing to and relying upon the scope of review of an arbitrator's decision as set forth in Section 7302(d)(2) of the U.A.A., 42 Pa. C. S. §7302(d)(2). Under that Section, a trial court is

empowered to modify an award which is "contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict." Based upon this standard, the trial court held that the arbitrator had erred in his decision.

We need not, however, examine the appropriateness of the trial court's decision under Section 7302(d)(2) because this Section does not constitute the correct scope of review for cases arising under Act 111. In Washington Arbitration Case, 436 Pa. 168, 259 A.2d 437 (1969), the Pennsylvania Supreme Court examined Section 7 of Act 111, 43 P.S. §217.7, which on its face precludes any appeal whatsoever of an arbitrator's award. The Court held, however, that review of an arbitration award in the nature of a narrow certiorari is available. Review under this standard is thus limited to questions of jurisdiction, the regularity of the proceedings before the arbitrator, questions of excess in the exercise of powers, and constitutional questions. This narrow scope of review was adopted despite the presence of Section 11 of the Act of April 25, 1927, P.L. 381,[1] (the forerunner of Section 7302(d) of the U.A.A.) which contains virtually the same language as Section 7302(d). In addition, even since the current review provisions under Section 7302(d) became effective on December 4, 1981, the Pennsylvania Supreme Court has, in Act 111 cases, continued to adhere to the view it expounded in Washington Arbitration Case. In October of 1985 the Court in Guthrie v. Borough of Wilkinsburg, 508 Pa. 590, 499 A.2d 570 (1985) reiterated the Washington Arbitration Case standard,[2] and most recently, in Lower Merion Fraternal Order of

---

[1] Formerly 5 P.S. §171(d). Section 11(d) was repealed by Section 501(c) of the U.A.A.

[2] See also Township of Moon v. Police Officers of the Township of Moon, 508 Pa. 495, 498 A.2d 1305 (1985).

*Police Lodge Number Twenty-Eight v. Township of Lower Merion,* 511 Pa. 186, 512 A.2d 612 (1986), this standard of review was confirmed by a court united on this issue but otherwise divided.[3]

Thus, the trial court, when it reversed based upon its determination that judgment notwithstanding the verdict would have been warranted, used the wrong standard. We will, however, for purposes of judicial economy review the case under the correct standard rather than remanding for the trial court to do so. There is no doubt that the arbitrator had jurisdiction in this case and there has been no allegation of any irregularity in the proceedings nor has there been an assertion that a constitutional violation has occurred. The County alleges only that the arbitrator acted outside of his authority; but, review of these allegations indicate that they are nothing more than assertions that the arbitrator's decision was "wrong." Clearly, however, the arbitrator's interpretation drew its essence from the collective bargaining agreement, *International Association of Fire Fighters Local 669 v. City of Scranton,* 68 Pa. Commonwealth Ct. 105, 448 A.2d 114 (1982), and hence it was not outside the bounds of his authority. Accordingly, based upon the provisions for review set forth in *Washington Arbitration Case,*[4] we hold that the trial court

---

[3] In *Lower Merion Fraternal Order of Police,* our Supreme Court was equally divided (one Justice not participating) on all issues except the proper standard of review over an Act 111 arbitration award, and both the Opinion in Support of Affirmance in Part and Reversal in Part, 511 Pa. at 190, 512 A.2d at 614 and the Opinion in Support of Reversal, 511 Pa. at 196, 512 A.2d at 617 cite *Washington Arbitration Case* and *Guthrie* as authority to reaffirm narrow certiorari as the proper standard.

[4] This opinion may appear to be inconsistent with our decision in *Appeal of Upper Providence Township,* 93 Pa. Commonwealth

erred in vacating the arbitrator's award. The determination of the trial court is thus reversed and the determination of the arbitrator reinstated.

## ORDER

Now, September 5, 1986, the order of the Court of Common Pleas of Allegheny County dated September 10, 1984 is hereby reversed and the decision of the arbitrator entered on July 11, 1983 is hereby reinstated.

---

Ct. 272, 502 A.2d 263 (1985). *Upper Providence*, decided in 1985, however did not expressly recognize the principles of law enunciated in the recent decisions of *Guthrie* (1985) and *Lower Merion Fraternal Order of Police* (1986). These cases, being decisions of the Pennsylvania Supreme Court, are, of course, binding upon us and hence we adhere to our prior view that the *Washington Arbitration Case* standard of review is the correct one for cases adjudicating interest and grievance arbitration arising under Act 111.