546 A.2d 137

Fraternal Order of Police Lodge No. 5 and Robert S. Hurst, Appellants *v.* City of Philadelphia and Kevin M. Tucker, Appellees

Argued September 15, 1987, before Judges CRAIG and MACPHAIL, and Senior Judge NARICK, sitting as a panel of three. Reargued February 24, 1988, before President Judge CRUMLISH, JR., and Judges DOYLE, BARRY, COLINS, PALLADINO, MCGINLEY and SMITH.

*Anthony J. Molloy, Jr.,* with him, *Robert B. Mozenter, Mozenter, Molloy & Durst,* for appellants.

*Ralph J. Teti,* Chief Deputy City Solicitor, for appellees.

OPINION BY JUDGE DOYLE, July 22, 1988:

The Fraternal Order of Police, Lodge No. 5 (FOP) seeks review of an order of the Court of Common Pleas of Philadelphia County which confirmed an Act 111[1] arbitration award allowing the Philadelphia Police Department (Department) to administer a polygraph test to all applicants who wished to transfer voluntarily into the Department's Special Investigations Unit (SIU). We affirm.

On January 31, 1986, Philadelphia Police Commissioner Kevin M. Tucker caused a directive to be sent by teletype advising all Department personnel of the formation of the SIU. The SIU was founded to help fight corruption within the Department, and to pursue major

---

[1] Act of June 24, 1968, P.L. 237, 43 P.S. §§217.1-217.10.

investigations involving organized crime, drugs, prostitution, gambling and vice. Paragraph three of the teletype read "[a]mong other considerations for acceptance to the unit shall be the requirement to submit to a polygraph examination and personal interview."[2] Another requirement of the process was the filling out of a questionnaire which was to be verified by polygraph. Shortly after the teletype, the FOP filed a grievance claiming that the directive's requirement that all SIU applicants submit to a polygraph test constituted a unilateral change in the FOP members' conditions of employment, in violation of the collective bargaining agreement.[3]

On February 6, 1986, the FOP also filed a Complaint in Equity seeking a *status quo* injunction restraining the City of Philadelphia (City) from enforcing the polygraph requirement pending arbitration of the FOP's grievance. At the initial hearing on the equity matter, the trial judge advised the parties that a Commonwealth Court decision on polygraph testing was due soon, *Marion v. Green*, 95 Pa. Commonwealth Ct. 210, 505 A.2d 360 (1986), *petition for allowance of appeal denied*, 514 Pa. 633, 522 A.2d 560 (1987). Consequently, the City agreed to the judge's request that the polygraph testing be delayed pending this Court's decision in *Marion*.

Two days after our decision in *Marion*, the City of Philadelphia, at the behest of the Department, proposed the following regulation:

---

[2] The selection process consists of the completion and certification of a questionnaire, an initial personal interview, a background investigation, a polygraph examination, and a final personal interview.

[3] The FOP also filed unfair labor practice charges against the City of Philadelphia with the Pennsylvania Labor Relations Board.

> Assignment and transfer for uniformed positions within the Police Department in units specifically assigned to the investigation or enforcement of narcotics, vice (gambling, prostitution, liquor), organized crime, intelligence, and internal police investigations may be conditioned upon the satisfactory completion of a polygraph examination at the discretion of the Police Commissioner.

The Department also informed the trial judge at the second hearing in the equity action that it would postpone implementation of the polygraph examinations pending the outcome of arbitration.

On April 17, 1986, a hearing was held before an arbitrator at which both sides presented live testimony, as well as the testimony adduced at previous proceedings in both state and federal court.[4] Ultimately, he ruled that there was nothing in the collective bargaining agreement touching upon the establishment of varying criteria when assignments or transfers to special units are being affected. The arbitrator also found that the Department had no duty to bargain regarding voluntary transfers and/or assignments and that the Department and the FOP had not shown that it and the City had, by prior practice, shown any criteria by which voluntary transfers and/or assignments would be made within the Department, or that the polygraph examination was an excluded criterion. Last, and most important, the arbitrator found that the Department's imposition of the

---

[4] Shortly after the second hearing the FOP filed yet another suit in federal court challenging the constitutionality of the polygraph testing and the questionnaire. This litigation has resulted in at least one reported opinion. *See Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia,* 812 F.2d 105 (3d Cir. 1987). We are informed by the City that the trial judge in the federal litigation has expressly reserved ruling on the polygraph issue.

polygraph requirement under the circumstances did not violate our decision in *Marion*.[5]

The FOP then filed a petition for relief under Section 7314 of the Uniform Arbitration Act, 42 Pa. C. S.

---

[5] The arbitrator's reasoning on this issue was as follows:

The Union does raise questions of 'legality.' First, the Union submits that the law established by the Commonwealth Court in the case of Marion v. Green prohibits the City from requiring an employee, as a condition of employment, to take a polygraph examination. As we read Marion v. Green the plaintiff in that case, a former police officer in the City of Philadelphia, was required to take a polygraph examination before his reinstatement, which had been ordered by an independent tribunal, would be effected. It appears that the Court held, among other findings, that the successful 'passing' of a polygraph examination could not be established as a condition precedent to a police officer's rightful entitlement to reinstatement in the absence of Civil Service Regulations empowering the City to establish such requirement. In our view, the facts and the context of Marion v. Green differ substantially from the facts and the context of the dispute before this Arbitrator. Applicants for positions in the Special Investigations Unit are current employees; they are not seeking to exercise rights to reinstatement. Applicants for positions in the Special Investigations Unit are not being required, for reinstatement purposes, to submit to a polygraph examination; they are being required to take the examination only if they voluntarily determine that they wish to be employed in a special unit within the Police Department, and failure to take the examination will not, apparently, result in a deprivation of employment. The Union has contended that Commissioner Tucker intends to make the polygraph examination the 'sole determinant' in selecting officers for assignment to or retention in the Special Investigations Unit. There may be some support for that assumption when one reads the proposed Civil Service Regulations submitted by the Police Commissioner to the City's Personnel Director on February 21, 1986, and when one considers that one of the only two criteria specified in

§7314, in the court of common pleas seeking to vacate the award. That court upheld the arbitrator's decision and this appeal followed.[6]

We note initially that the proper scope of review over an Act 111 arbitration award is that articulated by our Supreme Court in the *Washington Arbitration Case,* 436 Pa. 168, 259 A.2d 437 (1969), where the court held that courts have jurisdiction to review Act 111 arbitration awards in the nature of narrow certiorari. Such review is limited to questions concerning (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) an excess in the exercise of the arbitrator's powers; and (4) constitutional questions. *Id.* The continuing vitality of this narrow scope of review was recently reaffirmed in *Appeal of Upper Providence Township,* 514 Pa. 501, 526 A.2d 315 (1987) where the Supreme Court held the Uniform Arbitration Act standard of review was inapplicable to Act 111 proceedings.

--------

Commissioner Tucker's January 31, 1986 Teletype was the polygraph examination. However, the City has introduced testimony in the record which contradicts the Union's contention. That is, the City argues that there is no intention or plan to make the successful 'passing' of the polygraph examination the sole criterion for determining an officer's fitness for assignment to the Special Investigations Unit. Since, at this time, no police officer has been denied entry into or assigned to the Special Investigations Unit based solely upon the results of a polygraph examination the question of whether the City improperly used the polygraph in the transfer and/assignment of police personnel is not ripe for adjudication by this tribunal. In view of all of these circumstances, we find Marion v. Green distinguishable.

Arbitration decision at 23-25.

[6] This case was originally heard by a panel of this court in September of 1987, whereupon we directed that it be reargued before the Court en banc in February, 1988.

The FOP contends that the arbitrator committed "legal error" in holding that the Department could ask applicants for transfer into the SIU to submit to a polygraph examination in the absence of a Civil Service regulation allowing the Department to do so. We would first like to point out, however, that there is no "legal error" or "question of law" review of Act 111 arbitration awards. *See Appeal of Upper Providence Township*, 514 Pa. at 513 n.4, 526 A.2d at 321 n.4. Consequently, we take the FOP's argument to be that the arbitrator acted in "excess in the exercise of his powers" in that he would allow the employer to perform an illegal act, *i.e.*, an act that was not within the authority of the municipality or was prohibited by law. *Conley v. Joyce*, 482 Pa. 263, 393 A.2d 654 (1978); *Washington Arbitration Case*.

We note initially that Section 7321 of the Crimes Code, 18 Pa. C. S. §7321, provides:

> (a) **Offense defined**—A person is guilty of a misdemeanor of the second degree if he requires as a condition for employment or continuation of employment that an employee or other individual shall take a polygraph test or any form of a mechanical or electrical lie detector test.
>
> (b) **Exception**—*The provisions of subsection (a) of this section shall not apply to employees or other individuals in the field of public law enforcement* . . . . (Emphasis added.)

Thus, under this statute police departments are legally able to give polygraph tests to police officers as conditions of their employment.

The FOP's argument, then, rests primarily on two court decisions, *DeVito. v. Civil Service Commission of the City of Philadelphia*, 404 Pa. 354, 172 A.2d 161 (1961)[7] and *Marion*, as well as a provision of the Phila-

---

[7] This case is also sometimes cited as *Stape v. Civil Service Commission of the City of Philadelphia*.

delphia Home Rule Charter (Charter). In *DeVito*, two officers were dismissed on a number of charges, including a charge related to their refusal to submit to a polygraph test. The officers appealed to the Philadelphia Civil Service Commission (Commission) which upheld the discharge solely on the charges relating to the officers' refusal to take the polygraph test. The court of common pleas reversed and ordered reinstatement and that decision was affirmed by our Supreme Court. The Court noted in *DeVito* that:

> [N]owhere in the City Charter, the City Ordinances, the Civil Service Regulations, or the Police Department regulations is there a provision which authorizes the Police Commissioner or the Civil Service Commission, expressly or by implication, to force a City employee to submit to a polygraph test or authorizes a dismissal for refusal to take such test. For this reason neither the Police Commissioner nor the Civil Service Commission had the authority to require the test nor to discharge appellees for refusal or failure to take the test. It follows that both the Commissioner and the Civil Service Commission exceeded their powers to dismiss for 'just cause.'

*Id*. at 359-60, 172 A.2d at 164.

In *Marion*, a case decided after the enactment of Section 7321, we decided that an officer who had been reinstated by the Commission could not be required by the Department, in the absence of a Civil Service regulation, to submit to a polygraph test as a condition of reinstatement. We rejected in *Marion* the Department's argument that the passage of Section 7321 had empowered it to give polygraph tests to officers stating, "[t]he mere exemption in 18 Pa. C. S. §7321, a criminal statute, does not amount to a grant of power, nor does it notify interested parties that the Philadelphia Police

Department does in fact require the submission to a polygraph test before reinstatement as a standard procedure." *Id.* at 216, 505 A.2d at 363-64. This Court also held that *DeVito* remained the controlling precedent, reasoning as follows:

> Although the city has suggested that DeVito has been overruled by the passage of 18 Pa. C. S. §7321, we do not agree. Before the passage of 18 Pa. C. S. §7321, no law prohibited the use of polygraph tests as a condition of employment or continued employment, and no law expressly permitted officials in law enforcement to require the polygraph as a condition of employment or continued employment. The passage of the provision established a general proscription against the use of the polygraph by employers as a condition of employment, but it merely exempted law enforcement officials from that general proscription. Accordingly, the passage of the provision granted no further authorization to law enforcement officials regarding the use of the polygraph than they enjoyed before its passage.

*Id.* at 217, 505 A.2d at 364. Accordingly, it is clear from the case law that a police department may not *dismiss* or *refuse to reinstate* a police officer for his refusal to submit to a polygraph test, absent a civil service regulation requiring the officer to do so. These cases, however, are not dispositive of a situation involving a voluntary transfer to a special unit of officers already employed.

Additionally, the FOP points to Section 7-401 of the Philadelphia Home Rule Charter, 351 Pa. Code §7.7-401, which provides:

> The regulations shall provide for:
>
> . . .
>
> (m) Transfer from one position to a similar position in the same class and level of responsibility.
> . . . (Emphasis added.)

The FOP asserts that Section 7-401(m) of the Charter requires that the City promulgate regulations regarding the criteria for transfer, including polygraph examinations. The FOP urges that in light of the cases and this Charter provision the arbitration award should be struck down as illegal. We cannot agree.

In *Marion,* this Court dealt with a situation where a police officer had a *property right* to be reinstated·under a proper administrative order. Likewise, in *DeVito,* the discharged officers had a property right created by statute and regulation in retaining their employment. Generally, however, there is no property right inherent in a transfer situation, absent a statute, regulation or contractual agreement creating one. *Rossi v. Pennsylvania State Police,* 100 Pa. Commonwealth Ct. 639, 515 A.2d 120 (1986).

Our decision today also comports with this Court's recent decision in *Hatfield Township v. Stanley,* 113 Pa. Commonwealth Ct. 258, 537 A.2d 63 (1988). In *Stanley* we held that a first class township could not condition a police officer's promotion on the taking of a polygraph examination where this requirement is not embodied in a civil service regulation. Under Section 635 of The First Class Township Code[8] a police officer has a right to have the promotion process carried out in conformity with the township's civil service regulations. There is no statutory requirement here, however, that civil service regulations need be enacted for transfers.

The FOP points to Section 7-401(m) as creating such a right and further argues that that Section mandates that the City promulgate regulations establishing criteria for transfers. We disagree. Section 7-401(m)

---

[8] Act of June 24, 1931, P.L. 1206, *as amended,* 53 P.S. §55635. Section 635 was added by Section 20 of the Act of May 27, 1949, P.L. 1955, *as amended.*

merely provides that the City must promulgate regulations providing for and concerning the specific type of transfer (*i.e.*, from one position to a similar one in the same class and level of responsibility), mentioned in that Section; it cannot be reasonably construed to apply to voluntary transfers into special Department units. Since no property right is involved here, the City was not required to promulgate regulations concerning polygraph testing *in this particular context*. Here, as the arbitrator noted, the police officers "are being required to take the [polygraph] examination only if they *voluntarily* determine that they wish to be employed in a special unit within the Police Department," (emphasis added), and the polygraph examination is merely a precondition to acceptance into the SIU. Thus, it is not unlike a requirement for transfer into a mounted unit that the transferring officer be able to ride a horse or that he or she weigh less than 230 pounds. *See* Arbitrator's decision at 24.

Accordingly, the order of the Court of Common Pleas of Philadelphia County is affirmed.

ORDER

Now, July 22, 1988, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby affirmed.

---

CONCURRING OPINION BY JUDGE PALLADINO:

: While I concur in the result reached in this case, I write separately because the majority's discussion of whether property rights are implicated in the context of a transfer is unnecessary to the resolution of this matter.

In this case, the arbitrator determined that the Department's administration of polygraph tests to all applicants wishing to be transferred into the SIU did not violate the parties' collective bargaining agreement.

FOP contended on appeal that the arbitrator exceeded his powers because the award would allow the Department to perform an illegal act (*i.e.*, the award would allow the Department to act outside of its authority). FOP's argument is premised upon the Pennsylvania Supreme Court's decision in *DeVito v. Civil Service Commission of the City of Philadelphia,* 404 Pa. 354, 172 A.2d 161 (1961), as well as this court's holding in *Marion v. Green,* 95 Pa. Commonwealth Ct. 210, 505 A.2d 360 (1986), *allocatur denied,* 514 Pa. 633, 522 A.2d 560 (1987).[1] Taken together, *DeVito* and *Marion* stand for the proposition that a police department may not *dismiss* or *refuse to reinstate* a police officer based upon that officer's refusal to submit to a polygraph, *unless* civil service regulations have been promulgated which require him to submit to the test. Based upon these cases and the cited provision of the Philadelphia Home Rule Charter, FOP contends that, in the absence of regulations, the Department lacks the legal authority to require police officers seeking a transfer into SIU to submit to a polygraph.

The arbitrator in the instant case recognized the issue of the "legality" of the polygraph requirement. However, the arbitrator resolved this issue by distinguishing *Marion* and noted that applicants for SIU positions are current employees who were not seeking to exercise rights to reinstatement. Further, the arbitrator stated that applicants for SIU positions are required to take a polygraph only if they voluntarily determine

---

[1] FOP also cites Section 7-401(m) of the Philadelphia Home Rule Charter, 351 Pa. Code §7.7-401(m), which states that civil service regulations shall provide for transfer from one position to a similar position in the same class and level of responsibility. The arbitrator's award does not address this specific provision nor is this provision mentioned in the "Position of the Union" section of the arbitrator's decision.

that they wish to be employed in that unit. Finally, the arbitrator determined that "failure to take the examination would not, apparently, result in a deprivation of employment." Arbitrator's Award at 23-25. Accordingly, the arbitrator denied FOP's grievance.

As the majority correctly states, our scope of review of an Act 111[2] arbitration award is in the nature of narrow certiorari. Thus, we are limited to reviewing the jurisdiction of the arbitrator, the regularity of the proceedings, constitutional questions, and excesses in the exercise of the arbitrator's powers. *See Appeal of Upper Providence Township*, 514 Pa. 501, 526 A.2d 315 (1987); *Dunmore Police Association v. Borough of Dunmore*, 107 Pa. Commonwealth Ct. 306, 528 A.2d 299 (1987). However, an error of law which does not so exceed the powers and authority of the arbitrator (such as a misinterpretation or misapplication of law affecting a term or condition of employment that did not require the doing of a prohibited act by the public employer) is not alone grounds for reversal of an Act 111 arbitration award. *Appeal of Upper Providence Township.*

By concluding that the decision in *Marion* was not dispositive in the context of a voluntary transfer, the arbitrator's award constitutes, at most, an error of law. So long as the arbitrator's award draws its essence from the terms of the collective bargaining agreement, this court should end its inquiry and should not intrude upon the domain of the arbitrator simply because it believes that the arbitrator's interpretation might be "wrong." *Allegheny County Police Association v. County of Allegheny*, 100 Pa. Commonwealth Ct. 327, 514 A.2d 964, *allocatur granted*, 514 Pa. 637, 522 A.2d 1106 (1986). Likewise, I believe that the majority has en-

---

[2] Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§217.1-217.10.

gaged in an unnecessary and independent evaluation of the reasons why a transfer *should be* distinguished from reinstatement, dismissal, or promotion.[3]

---

[3] The majority states that the decision in this case is in accord with our decision in *Hatfield Township v. Stanley*, 113 Pa. Commonwealth Ct. 258, 537 A.2d 63 (1988). However, *Stanley* did not arise in the context of an Act 111 arbitration. Judicial review in *Stanley* was therefore not circumscribed by the standards enunciated in *Appeal of Upper Providence Township*.

---

DISSENTING OPINION BY JUDGE MCGINLEY:

I respectfully dissent. The majority would find our decision in *Marion v. Green*, 95 Pa. Commonwealth Ct. 210, 505 A.2d 360 (1986) distinguishable on the grounds that *Marion* involved a police officer's property right to be reinstated as opposed to a mere transfer or reassignment within the police department which involves no inherent property right. At the same time the majority recognizes that Section 7-401(m) of the Home Rule Charter provides that the City must promulgate regulations for the transfer from one position to a similar one in the same class and level of responsibility. The majority distinguishes the regulation herein under scrutiny on the basis that it applies to voluntary transfers into a newly formed, special Department unit. I disagree.

The formation of a Special Investigations Unit to pursue investigations involving narcotics, vice, organized crime, and internal investigations obviously and necessarily requires officers already involved in these traditional areas of investigation to reapply and submit to a polygraph in order to work in a similar position. I would find that a reassignment or transfer under these circumstances involves a police officer's right to apply for a transfer from one position to a similar one thereby rendering our decision in *Marion* controlling. By affirming the trial court and approving the arbitration award

authorizing the Department to administer a polygraph to all applicants who wish to transfer voluntarily into the Department's newly formed Special Investigations Unit the majority is simply approving an illegal requirement on voluntary transfers from one position to another under the guise and pretext that such a unit is new and special.

The order of the trial court should be reversed and remanded.

Judge BARRY joins in dissent.