## CITY OF PITTSBURGH

v.

Matthew **BACHNER,** Michael Bauer, Mario Devito, Chris Hamill, Brian Imbarlina, Thomas Johnson, Robert Kerestes, Edward Malsch, Alexander Maxwell, Joel Redlinger, John Roche, Thomas Stenglein, Richardo Bontez Suzensky, Kevin Thompson, Kenneth Zilliot, Ryan Zurawsky, and the Pittsburgh Fire Fighters Local No. 1, International Association of Fire Fighters, Appellants.

Commonwealth Court of Pennsylvania.

Argued Oct. 16, 2006.
Decided Nov. 30, 2006.

Jonathan R. Colton, Pittsburgh, for appellants.

Hugh F. McGough, Pittsburgh, for appellee.

BEFORE: McGINLEY, Judge, and FRIEDMAN, Judge, and COHN JUBELIRER, Judge.

OPINION BY Judge FRIEDMAN.

Sixteen candidates disqualified from the position of fire fighter and the Pittsburgh Fire Fighters Local No. 1, International Association of Fire Fighters (Appellants) appeal from the November 22, 2005, order of the Court of Common Pleas of Allegheny County (trial court) granting declaratory relief to the City of Pittsburgh (City). The trial court held that the City is not required to hire any candidates for the position of fire fighter who were passed over on the basis of information furnished to a polygraph examiner unless the Civil Service Commissioner determines that the information on which the Fire Commissioner relied did not establish just cause for passing over the candidate.

The facts are not in dispute.[1] In May 2005, candidates for the position of fire fighter in the City took a civil service test and were placed on a publicly posted list of candidates ranked by test score. In July 2005, candidates in the top third of the list completed a Candidate Processing Form, in which they answered questions regarding various matters, including residency, education, military service, employment history, driving record, history of illegal drug use or sale and criminal background. The City's Office of Municipal Investigations (OMI) conducted background investigations on these candidates, starting at the top of the eligibility list. OMI searched police records, driving history, military records and other sources to confirm the accuracy and completeness of the information provided on the Candidate Processing Form. As part of the pre-employment screening, candidates were given polygraph tests, which were performed by a certified polygraph examiner. A candidate who refused to take the polygraph test would not have been hired, and no candidate refused to take the test.

---

1. (*See* R.R. at 48a–58a.)

Before conducting the polygraph test, the polygraph examiner obtained background information from each candidate, who was aware that a polygraph test would follow. At the conclusion of this interview, the candidate was attached to the polygraph and asked twelve questions. (*See* R.R. at 256a.) No candidate was disqualified on the basis that his or her answers to the polygraph examiner were not truthful.[2] However, some candidates apparently provided more complete or more accurate information during the polygraph procedure than they did on the Candidate Processing Form.

The process for application and appointment as a City firefighter is governed by section 3.1 of the Act of June 27, 1939, P.L. 1207, *as amended,* added by the Act of July 3, 1963, P.L. 186, 53 P.S. § 23493.1 (hereafter, the Firemen's Civil Service Act) and section 10 of the Act of May 23, 1907, P.L. 206, *as amended,* 53 P.S. § 23442 (hereafter, the General Civil Service Act). The Firemen's Civil Service Act provides that "appointments and promotions ... shall be made only from the top of the competitive list ... [but] the appointing officer may pass over the person on the top of the competitive list for just cause in writing." 53 P.S.

§ 23493.1(a). The General Civil Service Act sets forth grounds for disqualifying an applicant.[3] The Fire Chief, in consultation with the Department of Personnel, disqualified a number of candidates from the list of eligibles based on information provided by the candidates during the polygraph test process and the grounds for disqualification set forth in the General Civil Service Act.[4] (R.R. at 69a, 83a.)

After the Fire Chief notified various candidates that he was passing them over for just cause, the City filed a Declaratory Judgment Action, seeking a ruling that the City acted properly in utilizing polygraph procedures pursuant to the exception contained in section 7321 of the Crimes Code, 18 Pa.C.S. § 7321 (the Lie Detector Tests Law). Pursuant to that statute, a person is guilty of a misdemeanor of the second degree if he requires an individual to take a polygraph test as a condition for employment or continued employment. The prohibition does not apply to employees in the field of public law enforcement or who dispense or have access to narcotics or dangerous drugs. 18 Pa.C.S. § 7321(b).

In their answer, Appellants also sought declaratory relief. Appellants requested a

---

**2.** For this reason, we agree with the trial court that issues concerning the reliability of a polygraph examination are not relevant in this appeal. See R.R. at 266a.

**3.** In pertinent part, section 10 of the General Civil Service Act authorizes the disqualification of any applicant who

> is addicted to the habitual use of intoxicating liquors or drugs; or who has been guilty of any crime or of infamous or notoriously disgraceful conduct; or who has been dismissed from the public service for delinquency or misconduct; or who has made a false statement of any material fact, or practiced or attempted to practice any deception or fraud in his application, in his examination, or in securing his eligibility;

or who refuse to comply with the rules and regulations of the commission.

53 P.S. § 23442.

**4.** Every applicant disqualified from the list of eligibles was notified of the deadline for filing an appeal with the City of Pittsburgh Civil Service Commission (Commission). In late 2005, the Commission conducted appeal hearings for all candidates who were passed over and requested a hearing. Those who were successful before the Commission were afforded an opportunity to enroll as recruits in the Fire Academy. The individual Appellants here were all unsuccessful before the Commission, and each is pursuing a statutory appeal to the trial court. At Appellants' request, those appeals have been stayed, pending our decision in the present matter.

ruling that the exception to the Lie Detector Tests Law does not apply to fire fighters, so that the City was prohibited from requiring candidates to take a polygraph test as a condition of employment. In the alternative, Appellants sought a declaration that, even if the exception applies to City fire fighters, the City may not require candidates entitled to just cause protection to undergo a polygraph examination in the absence of a written regulation or policy authorizing that procedure as part of the process for hiring fire fighters.

On October 3, 2005, the trial court issued a decision holding, in part, that fire fighters, because of their role as first responders to medical emergencies, have access to dangerous drugs within the meaning of the exception in the Lie Detector Tests Law. (R.R. at 255a–67a.) Appellants have not challenged this ruling on appeal.

The trial court also ruled that section 116.02(a) of the City's Home Rule Charter authorizes the Fire Chief to develop procedures for obtaining information that may establish just cause for passing over a candidate on the competitive list.[5] (R.R. at 266a.) Appellants requested reconsideration, informing the trial court that the provision it relied upon is not part of the Home Rule Charter, but is, instead, a City ordinance. The trial court again considered Appellants' argument that the Fire Chief violated the just cause provision of the Firemen's Civil Service Act by requiring Appellants to submit to polygraph tests without first implementing a written policy authorizing that procedure as part of the pre-employment screening process. In its subsequent decision and order, dated November 22, 2005, the trial court relied on *Wishnow v. City of Philadelphia,* 118 Pa.Cmwlth. 289, 545 A.2d 417 (1988), *appeal denied,* 525 Pa. 639, 578 A.2d 932 (1990), and held that the just cause provision of the Firemen's Civil Service Act does not afford a candidate the right to question the process of obtaining information, but only requires that the information used to pass over the candidate supports just cause.

■ On appeal to this court, Appellants argue that: (1) the trial court erred in holding that Appellants had no right to challenge the requirement that they submit to a polygraph examination where there are no written regulations governing the use of polygraph testing; and (2) the trial court erred in holding that the City did not violate the just cause protection afforded to Appellants by requiring them to undergo polygraph testing without proper notice.[6]

Appellants rely on *DeVito v. Civil Service Commission,* 404 Pa. 354, 172 A.2d 161 (1961), and *Marion v. Green,* 95 Pa. Cmwlth. 210, 505 A.2d 360 (1986), *appeal denied,* 514 Pa. 633, 522 A.2d 560 (1987), for the proposition that candidates entitled to just cause protection may not be required to undergo polygraph testing as a condition of employment in the absence of

---

5. In its first decision, the trial court relied on the following provision as authorizing the Fire Chief to require applicants to submit to a polygraph:

> The Chiefs of the respective bureaus of the Department of Public Safety shall have the following powers and duties:
> (a) The care, management, administration and supervision of police, fire emergency medical forces and the City's emergency communication system.

At the time, the City represented that the above language was found in section 116.02(a) of the Home Rule Charter.

6. Our scope of review in a declaratory judgment action is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court committed an error of law or abuse of discretion. *Juniata Valley School District v. Wargo,* 797 A.2d 428 (Pa.Cmwlth.2002).

an existing written policy or rule setting forth that requirement. In *DeVito*, two policemen were interrogated concerning missing cash and checks. Both readily answered all questions and gave detailed written statements in connection with the incident. The officers were then asked to submit to a polygraph test, which they refused to do upon advice of counsel. Ultimately, the officers were ordered to submit to the test or be dismissed from the force. They again refused and were dismissed. Following an appeal to the Philadelphia Civil Service Commission, all charges were dismissed against the officers except those based upon their refusal to submit to the polygraph tests. On further appeal, the trial court held that the dismissals constituted a denial of the officers' right to due process and ordered reinstatement of the policemen with full pay. The city appealed to our supreme court, which first observed that local civil service regulations provided that the officers may only be dismissed for "just cause," a term that was not defined. The court in *DeVito* next observed that there was no provision in the city charter, city ordinances, city civil service regulations or police department regulations that, either expressly or by implication, required a city employee to submit to a polygraph test or authorized a dismissal for refusal to take such a test. For this reason, the court concluded that neither the police commissioner nor the civil service commission had the authority to require the test or to discharge the officers for refusing or failing to take the test. The court held that the commissioner and the civil service commission exceeded their powers to dismiss for "just cause."

Relying on *DeVito*, this court held in *Marion* that the exemption set forth in the Lie Detector Tests Law "does not amount to a grant of power, nor does it notify interested parties that the [city's police department] does in fact require the submission to a polygraph test" as standard procedure for reinstatement. *Id.* at 363–64. Thus, in *Marion*, we held that, where the police department had not announced a polygraph policy in advance by written directive, the police department could not condition reinstatement upon submission to a polygraph test. Subsequently, in *Hatfield Township v. Stanley*, 113 Pa.Cmwlth. 258, 537 A.2d 63 (1988), we repeated that the Lie Detector Tests Law is not an authorization to use the test and affirmed the trial court's holding that a requirement to undergo a polygraph examination as a condition of promotion to the position of sergeant was illegal and unenforceable in the absence of civil service rules providing for the use of polygraphs tests as part of the examination process and as a condition of appointment for promotion.

These cases establish that a police department may not dismiss or refuse to reinstate a police officer for refusal to submit to a polygraph test absent a civil service regulation requiring the officer to do so. However, in *Fraternal Order of Police Lodge No. 5 v. City of Philadelphia*, 118 Pa.Cmwlth. 132, 546 A.2d 137 (1988), *aff'd*, 523 Pa. 490, 567 A.2d 1388 (1990), we held that such cases were not dispositive in a situation involving police officers who wished to voluntarily transfer into an investigative unit. We first observed that, in *DeVito* and *Marion*, the police officers had a property right in retaining their employment, but that, in general, there is no property right inherent in a transfer situation unless there is a statute, regulation or contractual agreement that confers such a right. We concluded in *Fraternal Order of Police Lodge No. 5* that, because no property right was involved, the city was not required to promulgate regulations in advance concerning polygraph testing as a requirement for the transfers.

Similarly, in *Wishnow*, we held that a probationary employee who was dismissed for refusing to take a polygraph examination had no justifiable expectation that he would automatically enter the civil service as a full-time employee; accordingly, we reversed the trial court's conclusion that the officer's dismissal constituted a violation of public policy pursuant to *DeVito* and *Marion*.

■ Appellants argue that the trial court erred in this case by relying on *Wishnow*, because, in that case, no regulation afforded the probationary employee the just cause protection Appellants are entitled to here. However, we agree with the trial court that the just cause provision of the Firemen's Civil Service Statute affords candidates a right to placement on the list unless there is just cause for disqualification but does not confer upon candidates the right to challenge the information-gathering procedures utilized to determine whether just cause exists.[7] Here, Appellants' right to placement on the list was affected only by the information they provided, and Appellants retain the right to challenge their disqualification and argue that it was not supported by just cause.

Accordingly, we affirm.

### ORDER

AND NOW, this 30th day of November, 2006, the order of the Court of Common Pleas of Allegheny County, dated November 22, 2005, is hereby affirmed.

7. Because Appellants were not passed over for refusing to take or failing the polygraph test, we do not decide whether the just cause provision of the Firemen's Civil Service Act requires that eligible candidates be given prior notice in the form of a written regulation or policy before being disqualified as candidates on that basis.